M. S. A. D. NO. 43 TEACHERS' ASSOCIATION

v.

M. S. A. D. NO. 43 BOARD OF DIRECTORS

and

Maine Labor Relations Board.

Supreme Judicial Court of Maine.

Argued March 5, 1981.
Decided July 15, 1981.

this opinion was adopted.

---

* Glassman, J., sat at oral argument and participated in the initial conference, but died before

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick (orally), Portland, for plaintiff.

David W. Austin (orally), Rumford, for M. S. A. D.

Wayne W. Whitney, Jr. (orally), Augusta, for Maine Labor Relations Board.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN * and CARTER, JJ.

CARTER, Justice.

M.S.A.D. No. 43 Teachers' Association (the Union) appeals from a judgment of the Superior Court, Kennebec County, affirming an order of the Maine Labor Relations Board (the Board) that the M.S.A.D. No. 43 Board of Directors (the Employer) cease and desist from paying newly hired teachers a higher salary than that paid returning teachers with the same experience.[1] The Board found that the discrepancy in payment interfered with the returning teachers' bargaining rights, violating 26 M.R.S.A. § 964(1)(A).[2] The Union contends that the Board's cease and desist order is an inadequate remedy. To erase the effects of the unfair labor practice, the Union suggests, the Employer should be required to reimburse the returning teachers for the difference in salaries. We affirm the judgment of the Superior Court.

In April 1978, the Union and the Employer began negotiating over a collective bargaining agreement to succeed the agreement then in force. By August 31, 1978, the day the 1977–78 agreement expired, no new agreement had been reached. Negotiations continued into the new school year.

---

\* GLASSMAN, J., sat at oral argument and participated in the initial conference but died before this opinion was adopted.

1. Maine School Administrative District No. 43 encompasses the towns of Mexico, Byron, and Roxbury.

2. 26 M.R.S.A. § 964(1)(A) provides:

    1. *Public employer prohibitions.* Public employers, their representatives and their agents are prohibited from:

A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963;

26 M.R.S.A. § 963 provides in pertinent part:
    No one shall directly or indirectly interfere with, intimidate, restrain, coerce or discriminate against public employees . . . in the free exercise of their rights, hereby given, voluntarily to join, form and participate in the activities of organizations of their own choosing for the purposes of . . . collective bargaining. . . .

Between November 1978 and January 1978, the Union and the Employer filed with the Board four prohibited practice complaints. In one of them, the Union alleged, *inter alia,* that at the beginning of the new school year, August 28, 1978, the Employer paid newly hired teachers as though the 1977–78 collective bargaining agreement was still in effect, whereas it paid returning teachers as though the agreement had expired. That is, in setting the salaries of the newly hired teachers, the Employer translated prior years of experience and education into monetary values according to the salary step schedule set forth in the 1977–78 agreement; to the returning teachers, however, the Employer paid the same salary for the new school year that had been paid in the school year just past, disregarding the additional "salary step" of one year's teaching experience gained in 1977–78.

The Board consolidated the Union's and the Employer's complaints, held a hearing on May 21, 1979, and thereafter concluded that both sides had committed prohibited practices in the course of their stormy bargaining relationship. Concerning the salary issue, the Board declared:

> The Directors [(Employer)] . . . acted properly in paying the returning teachers at the same step which the teachers occupied during the 1977–78 school year. In *Easton Teachers Association v. Easton School Committee,* M.L.R.B. No. 79–14 at .7 (1979), we held that during the interim period between expiration of a contract and execution of a successor contract, "the *status quo* should be maintained as if the existing conditions were frozen rather than to give effect to a built-in wage escalator."[3] In the present case the 1977–78 agreement expired on September 1, 1978, and a successor agreement had not been executed by the com-

mencement of the 1978–79 school year. However, the Directors ran afoul of the Act by not paying the same salary to newly hired teachers as was payed to returning teachers with the same experience.

Thus, according to the Board, the Employer's violation of section 964(1)(A) lay not in paying returning teachers too little, but rather in paying newly hired teachers too much. The Board ordered that the latter practice stop, reasoning that, regardless of the Employer's motivation or the ultimate effect of the discrepancy in salaries,

> returning teachers could reasonably view the salary differential as a "message" that the Directors were displeased at having to bargain with the teachers, or as an attempt to pressure the teachers at the bargaining table.

The Union contends, as it contended before the Superior Court, that (1) the Board erred in concluding returning teachers were paid at a proper scale because, under the terms of the 1977–78 collective bargaining agreement, the salary step increments were to be applied to the 1978–79 school year, and (2) the public policy underlying our labor relations law required the Board to devise an affirmative remedy to eliminate any possible harmful effects of the differential in pay scales.

In support of its first argument, the Union relies upon Article IX of the expired collective bargaining agreement, which provided, "Each returning teacher, at the beginning of each school year, shall be placed on the proper salary level as outlined in Article X." Because the beginning of the 1978–79 school year fell on August 28, the Union asserts, and because the collective bargaining agreement was not due to expire until three days later, August 31, the Employer was bound by the agreement itself to advance returning teachers one sala-

---

3. *Easton* expressly relied on an opinion of the New York Court of Appeals, which explained:

> To say that the *status quo* must be maintained during negotiations is one thing; to say that the *status quo* includes a change and means automatic increases in salary is another. The matter of increments can be negoti-

ated and, if it is agreed that such increments can and should be paid, provision can be made for payment retroactively. *Board of Co-op Educ. Serv. v. New York State Pub. Employment Relations Bd.,* 41 N.Y.2d 753, 758, 395 N.Y.S.2d 439, 443, 363 N.E.2d 1174, 1177 (1977).

ry step on the schedule contained in Article X.

The Board points out that Article X, by its own terms, applied to "salary increases for 1977–78." The schedule is introduced by the statement: "The salary to be paid to teachers for their training and experience in 1977–78 is as follows: . . . " Article XXIX, entitled "Duration of Agreement," declares: "This Agreement shall take effect September 1, 1977, and shall expire August 31, 1978;" a survivorship clause nowhere appears.

■ Confronted with a collective bargaining agreement thus framed, the Maine Labor Relations Board, as in *Easton Teachers Association v. Easton School Committee*, M.L.R.B. No. 79–14 (March 13, 1979), properly could, and implicitly did, find that nothing in that agreement was meant to extend the scheduled rate increases beyond the 1977–78 school year. Notwithstanding the three day interval between the beginning of the new school year and the expiration of the old agreement, therefore, the Union's assertion that the Board erred in failing to enforce the sold agreement is meritless.

■ The Union's second argument—that the policies of our labor relations law

obligated the Board to grant an affirmative remedy designed to undo the speculative impact of the Employer's prohibited practice on future collective bargaining—is equally unpersuasive.[4] Once the Board finds a challenged practice to be prohibited, the determination of what affirmative relief, if any, will effectuate the policies of our labor relations law is, in the first instance, committed to the informed discretion of the Board. 26 M.R.S.A. § 968(5)(C).[5] It is not for us to interfere with the remedy chosen by the Board where the reasons articulated for it in the Board's decision clearly show it to be within the statutory powers of the Board. *Cf. Caribou School Dep't v. Caribou Teachers ASs'n*, Me., 402 A.2d 1279 (1979). As the Supreme Court has observed regarding a provision in the National Labor Relations Act, 29 U.S.C.A. § 160(c) (1973), nearly identical to section 968(5)(C), *supra*:

Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the [National Labor Relations] Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy.[6] *Phelps Dodge Corp. v. N. L. R.*

4. Only two cases are cited by the Union in which reviewing courts found inadequate the challenged remedy of a labor board. Both are readily distinguished. The first case, *Textile Workers Union of America v. N.L.R.B.*, 475 F.2d 973 (D.C.Cir.1973), involved the appeal of the twelfth in a series of N.L.R.B. orders against J.P. Stevens & Co., Inc. Implicitly agreeing that the time had arrived for the N.L.R.B. to "try harder—rather than more often—", *id.* at 974, the court granted the union's petition for review on the ground that in attempting to effectuate the policies of the federal law, the Board had utterly failed to take into account J.P. Stevens' conspicuous history of unfair labor practices. The second case, *International Union of Electrical, Radio and Machine Workers v. N. L. R. B.*, 426 F.2d 1243 (D.C.Cir.1970), *cert. denied* 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970), involved a train of flagrant labor violations rife with anti-union animus. Paramount among these was what amounted to a two year refusal to bargain with a newly elected union. Concerned not only that the employer had profited during those years by successfully avoiding a union

contract, but also that employee support for the union may have waned during that period, the court declared itself dissatisfied that the N.L.R.B., without explanation, should issue a "prospective only" cure.

In the case at bar, the Employer's prohibited practice is not egregious, the potential harm to the collective bargaining process not so apparent, and the Board's explanation for its remedy not so deficient that *Textile Workers* and *International Union* are persuasive precedent for the position taken by the Union.

5. 26 M.R.S.A. § 968(5)(C) provides in pertinent part that, upon concluding that a party has committed a prohibited practice, the Board

shall issue . . . an order requiring such party to cease and desist from such prohibited practice and to take such affirmative action . . . as will effectuate the policies of this chapter.

6. Given the overlapping statutory language of the two labor relations acts, the legislature must be understood to have intended that the

*B.,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed.2d 1271 (1941).

■ The Maine Board employed its statutory powers in this case with deliberate and reasoned judgment. In expressly concluding that a cease and desist order alone would best effectuate the policies of the Municipal Public Employees Labor Relations Act, 26 M.R.S.A. §§ 961 *et seq.,* the Board explained, on the one hand, that it was undesirable to require the newly hired teachers to refund their excess salary because they were innocent beneficiaries of the Employer's prohibited practice; on the other hand, to make the Employer retroactively pay the returning teachers for an additional and initially non-obligatory step on the salary schedule "would not be warranted since the question of the step at which newly hired teachers should be paid in light of our *Easton Teachers Association* decision [*supra,* decided March 13, *1979*] was a novel one."

We find neither in the Board's decision, nor in the Superior Court's review of that decision, any abuse of discretion.

The entry is:

Judgment affirmed.

All concurring.

remedial powers given to the Maine Labor Relations Board are the same as the remedial powers given by Congress to the National Labor Relations Board. *Caribou School Dept't v. Caribou Teachers Ass'n, supra* at 1284. When, therefore, we are asked to examine a remedy implemented by the Maine Board, we will be mindful of the scope of review employed in the federal courts when examining remedies implemented by the National Board.