Fairview School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
Douglas Layman, Intervenor.

Fairview School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
Winfred K. Decker, Intervenor.

Fairview School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
Dennis W. Huzinec, Intervenor.

Fairview School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
Suzanne Byler, Intervenor.

Fairview School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
Richard W. Wildauer, Intervenor.

636

Argued June 1, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Frank L. Kroto*, with him *J. W. Alberstadt, Jr., Donald C. Buseck, Cygne L. Nemir, Quinn, Gent, Buseck and Leemhuis, Inc.*, for petitioner.

No appearance for respondent.

*George Levin, Shamp, Levin, Arduini, Jenks & Hain,* for intervenors.

*William Fearen,* with him *Michael I. Levin* and *John DiClemente, Cleckner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE WILLIAMS, JR., September 17, 1981:

Before this Court is the consolidation of five appeals brought by appellant, the Fairview School District, from orders of the Unemployment Compensation Board of Review (Board) granting claimants benefits pursuant to Section 402(d) of the Unemployment Compensation Law (Act).[1]

The claimants in this case are employed as teachers by the Fairview School District. On or about September 1, 1977, the Fairview School District (District) and claimants' collective bargaining agent, the Fairview Education Association (Association), entered into a collective bargaining agreement governing the wages, hours, and other terms and conditions of claimants' employment. That agreement expired on August 26, 1979. Prior to the expiration of the agreement, the District, at its regular monthly meeting of August 20, 1979, passed a resolution offering to extend the 1977-79 contract for a period of up to sixty days, under the same terms and conditions then in effect. By a letter dated August 23, 1979 the Association requested an extension of the existing contract "for a reasonable period of time beyond the present expiration date of August 26, 1979, which would include an extension of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d).

all terms of the present contract including, but not limited to, the grievance procedure and fringe benefits.'' By letter of August 28, 1979, the District responded by advising the Association of the School Board's action of August 20, 1979, and resolving to extend the contract for a period of up to sixty days. Amongst the provisions contained in the expired contract was a clause providing for salary increments for the employees for each year of employment. No formal, unified agreement was ever documented concerning the extension of the contract.

The school term opened on September 5, 1979, and the claimants reported to work on that date. On September 7, 1979, the claimants received their regularly scheduled bi-weekly pay checks. The pay received by the claimants was computed on the basis of the salary matrix used for the 1978-79 school year, and did not include any increase for an additional year of service as was provided for by the salary matrix incorporated into the contract. Excluding the salary schedule, all benefits and related items remained the same as before the contract expiration.

On September 13, 1979, a grievance report was filed by a representative of the Association on behalf of its members. The report alleged that the District had failed to move its personnel to their proper salary steps according to their years of service. On September 14, 1979, a work stoppage commenced. The work stoppage continued until October 22, 1979, when all teachers employed by the District returned to work pursuant to an Order of the Court of Common Pleas of Erie County.

Claimants herein applied for benefits on September 16, 1979. The Office of Employment Security denied benefits in November, 1979, reasoning that the claimants were involved in a labor dispute and thus ineligible under Section 402(d) of the Act. Following

an appeal and a referee's hearing, the Office's decision was affirmed. Claimants further appealed that decision to the Board, which reversed the referee's determination and awarded benefits. The Board resolved that the claimants had withheld their services due to a lockout by the School District, rather than due to a strike. The District then filed an appeal from the Board's order which is presently before this Court.

The sole issue facing us in this appeal is whether the work stoppage which occurred was a lockout or a strike. Appellant maintains that the instant claimants participated in a strike and, thus, they are not entitled to benefits under the Act. We disagree.

The Pennsylvania Supreme Court, in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), enunciated the test for deciding whether a labor cessation is a lockout or a strike. The criteria was stated as follows:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' . . . .

*Id.* at 444-45, 163 A.2d at 93-94.

A work stoppage resulting from a refusal of the employer to extend the expiring contract and preserve the status quo constitutes a lockout. In short, the *Vrotney* test requires a judgment as to which side first refused to maintain the status quo existing at the expiration of the prior collective bargaining agreement.

The term "status quo" has been defined as the last actual, peaceable, non-contested status which preceded the pending controversy. *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 52 A.2d 317 (1947).

In the instant case, the Board found that under the terms of the pre-existing collective bargaining agreement, a salary increase was mandated at the beginning of each school term based on the length of service of the individual teacher. The Board further found that the District failed to include that annual increment in the paychecks of the teachers during the period of time that the extension agreement was in force. Thus, the Board concluded, the employer did not comply with the conditions of the prior collective bargaining agreement. Therefore, the employer did not maintain the status quo and the claimants' work stoppage was in fact a lockout.[2]

The task of ascertaining the final cause and responsibility for a work stoppage lies with the compensation authorities. Where the findings of the Board are supported by substantial evidence, they are conclusive on appeal. *Vrotney Unemployment Compensation Case, supra.* In this case, the Board's findings are based on evidence contained in the record, and are thus binding on this Court. Accordingly, we must affirm the Board's decision awarding claimants benefits.

## ORDER

AND Now, this 17th day of September, 1981, the orders of the Unemployment Compensation Board of Review at Decision Nos. B-187304; B-187305; B-187306, B-187307 and B-187308, awarding benefits are affirmed.

---

[2] *See Elizabeth Forward School District v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 194, 420 A.2d 785 (1980).