577 A.2d 235

**Karen A. FERRY, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 3, 1990.

Decided July 2, 1990.

William K. Eckel, for petitioner.

John E. Herzog, Asst. Counsel, with him, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Frank P. Clark, with him, Michael I. Levin, Cleckner and Fearen, for intervenor, Turkeyfoot Valley Area School Dist.

Before CRAIG and PALLADINO, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Karen Ferry (Claimant) appeals an order of the Unemployment Compensation Board of Review (Board) reversing a referee's decision and denying Claimant's petition for unemployment compensation benefits pursuant to Section

402(d) of the Unemployment Compensation Law (Law)[1] (unemployment due to a labor dispute other than a lockout).

Claimant was employed by Turkeyfoot Valley Area School District (District) as a teacher and was represented by the Turkeyfoot Valley Education Association (Union) for collective bargaining purposes. A labor agreement between Union and District expired at midnight on August 31, 1987, without the parties having agreed on a successor contract. The teachers continued to work under the terms of the old contract from August 31, 1987 through January 4, 1988. On January 5, 1988, the teachers engaged in a strike which ended on March 10, 1988. The teachers returned to work under the terms and conditions of the expired contract with the additional agreement that 72 hours of written notice would be given before any future work stoppage.

On March 26, 1988, Union gave District notice of its intent to strike on or after March 29, 1988. On March 30, 1988, Union engaged in a strike. That same day, Union offered to return to work on March 31, 1988, under the terms and conditions of the expired contract on a day-to-day basis. District rejected this offer. The teachers reported to work on March 31, 1988, but were not permitted entrance. On April 14, 1988, Union again offered to return to work under the terms of the expired contract on a day-to-day basis. District rejected the offer. Union's offers did not include the additional agreement that 72 hours of written notice would be given before any future work stoppage.

Claimant filed a petition for unemployment compensation benefits for the period after March 30, 1988. The Office of Employment Security (OES) granted benefits. District appealed to the referee who affirmed. District appealed to the Board which reversed the referee and denied Claimant benefits.

On appeal to this court, Claimant contends that Union's offers to return to work under the terms and conditions of

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d).

the expired contract converted the strike into a lockout. Our scope of review is limited to a determination of whether findings of fact are supported by substantial evidence, errors of law have been committed or constitutional rights violated. *Avco Corporation v. Unemployment Compensation Board of Review*, 105 Pa.Commonwealth Ct. 316, 524 A.2d 531 (1987).

The test to determine who should bear the responsibility for a work stoppage, set forth in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), was summarized by our supreme court in *Philco Corporation v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968) as follows:

[L]ogically the test of whether a work stoppage resulted from a strike or a lockout requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing.

*Id.*, 430 Pa. at 103, 242 A.2d at 455. However, a strike, once established, may be converted to a lockout. *Avco.* "[W]hen, as here, the work stoppage takes the *form* of a strike, the burden is upon the union to show that it made the initial 'peace' move by offering to continue the status quo." *Philco*, 430 Pa. at 104, 242 A.2d at 456 (Emphasis in original). We must consider the cause of the unemployment on a week-by-week basis. *High v. Unemployment Compensation Board of Review*, 505 Pa. 379, 479 A.2d 967 (1984).

It is not disputed that the work stoppage on March 30, 1988 was the result of a strike. Claimant contends that the strike was transformed into a lockout when District rejected Union's offer on March 30, 1988 to return to work the following day under the terms and conditions of the expired contract on a day-to-day basis. Claimant contends that Union offered to return the parties to the status quo. Claimant argues that the status quo is always the terms of

the expired contract regardless of any subsequent agreements between Union and District.

"The status quo has been defined as the last actual, peaceable and lawful, non-contested status which preceded the controversy." *Miceli v. Unemployment Compensation Board of Review*, 519 Pa. 515, 521, 549 A.2d 113, 116 (1988), citing *Fairview School District v. Unemployment Compensation Board of Review*, 499 Pa. 539, 544, 454 A.2d 517, 520 (1982). Although neither of the parties may unilaterally alter the status quo, the parties may agree to alter the terms and conditions of employment pending the outcome of negotiations. *See Local 730 v. Unemployment Compensation Board of Review*, 505 Pa. 480, 480 A.2d 1000 (1984). Consequently, we must look to the status of the parties just prior to the March 30, 1988 work stoppage.

It is undisputed that Union and District agreed, prior to the March 30, 1988 work stoppage, that a 72 hour written notice would be given prior to any future work stoppage. The mutually agreed upon notice provision became part of the terms and conditions of employment creating a new status quo. Consequently, Union's subsequent offers to return to work were required to contain this term. Because Union failed to include this term in its offers to return to work, Union failed to offer to return to work under the status quo and the work stoppage continued to be the result of a strike.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, July 2, 1990 the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

CRUMLISH, Jr., former President Judge, did not participate in the decision.

SILVESTRI, Senior Judge, dissenting.

We adopt the facts as stated in the majority opinion, but reference the next scheduled work day, April 4, 1988, omitted by the majority. On that date, as on March 31, 1988, the same situation occurred; the teachers attempted to return to work but were prevented access.

The majority focuses on an agreement entered into between the teachers and the school district in which the teachers agreed to provide 72 hour notice to the school district in advance of any strike. The majority calls this a "modification" to the status quo of the pre-existing contract and determined that this agreement must be incorporated in any agreements to return to work by the teachers. Finding that the teachers did not include the notice in their offer to return to work during that critical time period, the majority erroneously feels that the teachers did not "maintain the status quo" and should be denied benefits.

The Supreme Court defined "status quo" in *Fairview School District v. Unemployment Compensation Board of Review,* 499 Pa. 539, 544, 454 A.2d 517, 520 (1982), as the last actual, peaceable and lawful noncontested status which preceded the controversy; and stated that "[m]aintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract." The existing relationship in the instant case did not include a 72 hour notice provision. Similar to the Supreme Court's reversal of this court, and finding in *Fairview,* that the school district's refusal to pay stepped up salaries beyond the years contained in the expired contract did not constitute a disruption of the status quo, the 72 hour notice provision was *not* part of the original pre-existing contract and cannot be the determining factor in resolving this dispute. Neither can lack of reference to the notice provision be viewed as a failure of the teachers to maintain the status quo. Further, no quid pro quo for that notice provision is included in the record; no consideration was given for the provision.

Hence, the critical question in this case is whether the nonwork period beginning March 31, 1989 was a strike or a lockout.

Our Supreme Court established the test for determining whether a work stoppage is the result of a lockout or a strike in *Vrotney v. Unemployment Compensation Board of Review*, 400 Pa. 440, 444–45, 163 A.2d 91, 93–94 (1960), stating:

> [W]hen the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under Section 402(d) of the Unemployment Compensation Law ... 43 P.S. § 802(d), of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and disqualification for unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.

In applying the *Vrotney* test to the facts of this case, it is clear that the teachers offered to continue working for a reasonable time [1] under the pre-existing expired contract; and equally clear that the school district refused to allow the teachers to continue to work. Such action on the part of the school district constitutes a lockout.

The agreement between the teachers and the school district necessitating 72 hour notice of intent to strike by the

---

**1.** *See Abington School District v. Unemployment Compensation Board of Review,* 111 Pa.Commonwealth Ct. 312, 533 A.2d 1100 (1987), in which it was determined that an offer to work on a day-to-day basis constitutes a "reasonable time" within the context of a work stoppage involving teachers and a school district.

teachers does not act as a modification of the pre-existing contract. It did not, as the majority concludes, become "part of the terms and conditions of employment creating a new status quo." Rather, the work stoppage was the responsibility of the school district because their actions interfered with the teachers' attempt to continue working for a reasonable time under the pre-existing contract.

The determination of the Board should be reversed, the decision of the referee reinstated, and benefits should be awarded.