**NESHAMINY FEDERATION OF TEACHERS LOCAL UNION 1417, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.
Decided Dec. 8, 2009.

---

Marc L. Gelman, Philadelphia, for petitioner.

Warren R. Mowery, Jr., Harrisburg, for respondent.

David F. Conn, New Britain, for intervenor, Neshaminy School District.

BEFORE: LEAVITT, Judge, and KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Neshaminy Federation of Teachers, Local Union No. 1417 (Union) petitions for review of a final order of the Pennsylvania Labor Relations Board (Board) that dismissed exceptions filed by Union and made final the decision of the Board not to issue a complaint on a charge of unfair labor practices against the Neshaminy School District (District). The main issue presented is whether, for purposes of maintaining the *status quo* following expiration of a collective bargaining agreement, the District was obligated to continue making periodic wage adjustments based upon additional academic credits earned by its teachers in the preceding year. Finding no error by the Board, we affirm its order.

Union is the exclusive bargaining representative of the District's teachers and other professional employees under the Public

Employe Relations Act (PERA).[1] Union and the District were parties to a collective bargaining agreement (CBA) that expired on June 30, 2008. Article VI of the CBA governs wages and establishes a yearly salary schedule for the six-year term of the agreement. Each salary schedule contains 11 steps for vertical placement, which correspond with the member's prior teaching experience, and 10 columns for horizontal placement. Horizontal placement on the schedule correlates with the member's professional degree and certification.

Sections 6–2 and 6–3 of the CBA establish guidelines for horizontal placement on the salary schedule. More specifically, Section 6–2.2 states:

> Horizontal placement is determined by degree and accreditation at the beginning of each school year or at the time interim evaluations are made of credits officially accepted for salary credit in accordance with the regulations herein contained.

Reproduced Record at 27a (R.R. ——). Section 6–3.6 provides as follows for evaluation of credits offered for salary consideration:

> Credits offered for salary consideration under the provisions of this ARTICLE shall be reviewed three times a year.
> A. July 15—credits evaluated as of this date shall be added to the annual salary for the next school year.
> B. October 15—credits evaluated as of this date shall be added to the annual salary for the school year. Payment for the additional salary earned during the months of July through October shall be paid on the second pay period in November.
> C. March 15—credits evaluated as of this date shall be awarded half-salary credit for the current school year and be added to the annual salary for the next school year. The half-year improvement shall be paid in a lump sum on the second pay period in April.

R.R. 27a–28a.

When the CBA expired on June 30, 2008, the District ceased making any wage adjustments, including adjustments based on academic credits. On September 26, 2008, Union filed a charge of unfair labor practices with the Board. Union claimed that the District had violated Article VI of the CBA when it failed to adjust the teachers' salaries on July 15, 2008. This failure to abide by the CBA violated, according to Union, Section 1201(a)(1) and (5) of PERA, 43 P.S. § 1101.1201(a)(1), (5).[2]

The Secretary of the Board declined to issue a complaint on Union's charge of unfair labor practices. The Secretary explained:

> The Board has held, and the Courts agree, that the status quo following con-

---

**1.** Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

**2.** Section 1201 of PERA states, in relevant part:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

\* \* \*

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. § 1101.1201(a)(1), (5).

tract expiration does not include the continuation of periodic wage adjustments. *Pennsylvania State Park Officers Association v. PLRB*, 854 A.2d 674 (Pa.Cmwlth.2004), *appeal denied,* 582 Pa. 704, 871 A.2d 194 (2005). Therefore, you have failed to state a cause of action under Section 1201(a)(5) of PERA.

Further, you have not alleged facts that would support an independent violation of Section 1201(a)(1) of PERA. As any violation of clause (1) would be a derivative violation of clause (5), no claim under Section 1201(a)(1) was stated. Accordingly, no complaint will be issued and your charge is dismissed.

R.R. 4a. Union filed exceptions to the Secretary's decision, which the Board dismissed. Union now petitions for this Court's review.

On appeal,[3] Union argues that the Board abused its discretion by declining to issue an unfair labor practices complaint against the District. Union's primary argument is that, for purposes of maintaining the *status quo* following contract expiration, the District was obligated to continue adjusting teachers' salaries to reflect the academic credits they had earned during the year. Union acknowledges that salary adjustments following contract expiration are generally disfavored as a disruption of the *status quo.* Union argues, however, that the courts have never directly considered wage adjustments for academic credits, which Union argues are qualitatively different from other types of wage adjustments. We conclude that Union draws a distinction without a difference.

In *Fairview School District v. Unemployment Compensation Board of Review,* 499 Pa. 539, 454 A.2d 517 (1982), the Pennsylvania Supreme Court considered a public employer's discontinuation of salary increases after a contract has expired. There, the union and the school district informally agreed to extend the terms of an expiring collective bargaining agreement for 60 days while they negotiated a new contract. The teachers reported for work for the new school year after the old agreement expired. When they did so, they learned that their salaries had not included any step-up in pay to reflect their additional year of service. A work stoppage ensued. In order to determine the teachers' eligibility for unemployment benefits, the Supreme Court had to determine whether the work stoppage was a lockout by the district or a strike by the teachers. Stated another way, the dispositive issue was which party had upset the *status quo.* The Court held that the school district's refusal to pay stepped up salaries did not constitute a disruption of the *status quo. Id.* at 547, 454 A.2d at 521. The Court reasoned:

> The underlying rationale for the status quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract. *To require the School District to pay stepped up salary increases beyond the specified*

---

**3.** The issuance of an unfair labor practice complaint lies within the discretion of the Board. Section 1302 of PERA, 43 P.S. § 1101.1302. The scope of appellate review is limited to determining "whether there has been a manifest and flagrant abuse of discre-

tion or a purely arbitrary execution" of the Board's duties or functions. *Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Board,* 481 Pa. 81, 89, 392 A.2d 256, 260 (1978) (quotation omitted).

*years contained in the expired contract changes the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered.*

*Id.* at 546–547, 454 A.2d at 521 (emphasis added).

This Court recently considered a similar issue with respect to longevity wage increases provided in a collective bargaining agreement that had expired. In *Pennsylvania State Park Officers Association v. Pennsylvania Labor Relations Board,* 854 A.2d 674 (Pa.Cmwlth.2004), the unions representing two units of Commonwealth employees argued that the Commonwealth committed an unfair labor practice by refusing to pay longevity wage increases that accrued during the post contract expiration period. This Court observed that the real issue was how to define the *status quo. Id.* at 680. The Board argued that it meant freezing wages at the moment the collective bargaining agreements expired. The unions, on the other hand, argued that maintaining the *status quo* meant increasing their members' wages in accordance with the automatic wage escalators in the expired agreements. The unions attempted to distinguish *Fairview School District.* They argued that the "stepped-up" salary increases at issue in *Fairview School District* were different from longevity wage increases at issue in the contract between the State Park Officers and the Commonwealth.

In rejecting the unions' argument, we reasoned that it was premised upon a distinction without a difference because

[b]oth schemes provide financial rewards based upon an employee's length of service, and in this case the incentives were part of the overall salary structure that was a mandatory subject of bargaining between the parties.

*Id.* at 681–682.[4] We also emphasized that the Supreme Court's holding in *Fairview School District* reflected sound labor policy. Longevity wage increases that were economically feasible when negotiated may become financial burdens in a subsequent budgetary cycle. Requiring the Commonwealth to make longevity payments pursuant to an expired contract essentially removes that issue from the bargaining process and forces the Commonwealth to come to the table already burdened with a wage scheme that may no longer be economically viable. Defining the *status quo* so as to provide for wage increases following contract expiration "would allow employees to gain an unfair advantage over their public employers by obtaining the very wage increases under negotiation. This would discourage good faith negotiations and compliance with [statutory] deadlines." *Id.* at 682. Finally, the *State Park Officers* court noted that the matter of increments can be negotiated and, if it is agreed that such increments can and should be paid, provision can be made for

**4.** Notably, this Court in *State Park Officers* also rejected the unions' reliance on *New Castle Area School District v. Unemployment Compensation Board of Review,* 159 Pa. Cmwlth. 611, 633 A.2d 1339 (1993), for the proposition that an employer's refusal to continue longevity wage increases during contract hiatus constitutes an unlawful, unilateral change in the *status quo.* We reasoned that *New Castle* was factually distinguishable because, in that case, the school district and the union had a separate agreement barring *any* salary increases until a new contract was in place. Therefore, the school district upset the *status quo* by paying salary increases to teachers who had earned academic credits but not to the larger group of claimants who had earned similar increments on the basis of longevity. There was no such side agreement in *State Park Officers* or in the case *sub judice* and, accordingly, *New Castle* is not directly applicable to either case.

retroactive payment to affected employees.

Here, Union argues that wage adjustments for a teacher's academic credits are different from automatic step-up or longevity wage increases. Union asserts that longevity increases occur automatically with the simple passage of time, whereas academic credits are earned by a teacher through the sacrifice of his or her own time and labor. Union contends that because one type of adjustment is automatic and the other is voluntary, they should be treated differently for purposes of defining the *status quo*.

■ Union's argument explains how wage adjustments based on academic achievement are distinct from other adjustments.[5] Its argument fails, however, to articulate why a salary increase based on academic credits should be treated differently than an increase based on years of service. As aptly noted by the District, "a salary increase is a salary increase." Intervenor's Brief at 6. Wages are a mandatory subject of bargaining, as are any adjustments to those wages. There is simply no logical basis for treating academic credit increases differently from other wage increases.

In addition, the "sound labor policies" identified by this Court in *State Park Officers* weigh heavily in favor of treating an academic credit adjustment like any other salary adjustment. A school district may need to renegotiate any or all aspects of a salary schedule depending upon the economic climate. Defining the *status quo* to include wage increases from an expired collective bargaining agreement, regardless of the reason for the increase, would allow the employees to gain an unfair advantage over their public employer by obtaining the very wage increases under negotiation. Finally, if Union and the District ultimately agree to continue making academic credit salary adjustments in the new CBA, they can provide for retroactive payment to those teachers who earned the adjustment.

■ Union also argues that the Board failed to consider that the specific subject of evaluating teachers' academic credits on July 15 was not contested since neither party sought to modify Section 6–3.6(A) of the expired CBA, which requires evaluation of academic credits on July 15 of every year.[6] Union suggests that the District upset the *status quo* by ignoring a provision that will presumably be in the new collective bargaining agreement because it is uncontested. We reject Union's unduly narrow "snapshot" view of the bargaining process. Until a new collective bargaining agreement is actually signed by both parties, any mandatory subject is still theoretically open to bargaining. All wage issues fall into that category. Moreover, Union cites absolutely no authority for its position that determining the *status quo* should, or even can, be based upon the actual subjects of negotiation between the parties. By this logic, the *status quo* would be in a constant state of flux as

---

5. We are not persuaded by Union's argument that academic credit increases differ from step-up or longevity wage increases because the former are earned voluntarily while the latter are automatic. Wage increases based upon the length of an employee's service are also voluntarily earned insofar as the employee chooses to remain employed by the same employer from one year to the next.

6. At the time Union filed its charge of unfair labor practices, the District had proposed eliminating Sections 6–3.6(B) and (C) of the CBA, which require evaluation of academic credits on October 15 and March 15, respectively. R.R. 27a–28a.

subjects of negotiation are resolved or re-visited.

In sum, it is now well-established that maintaining the *status quo* at contract expiration does not include step-up or longevity wage increases. The rationale for this common law rule applies with equal force to wage increases for academic credits, and Union's attempt to distinguish these types of adjustments for purposes of collective bargaining is unconvincing. Accordingly, we hold that the Board did not abuse its discretion by declining to issue a complaint on Union's charge of unfair labor practices against the District.

### *ORDER*

AND NOW, this 8th day of December, 2009, the order of the Pennsylvania Labor Relations Board in the above-captioned matter, dated March 17, 2009, is AFFIRMED.