574 A.2d 123

CITY OF PHILADELPHIA and Orville W. Jones, Appellants,

v.

FRATERNAL ORDER OF POLICE, LODGE NO. 5 and
Richard B. Costello and Joseph Campana, Appellees.

Commonwealth Court of Pennsylvania.

Argued March 7, 1990.

Decided April 30, 1990.

632

Ralph J. Teti, Chief Deputy City Sol., with him, Susan Shinkman, Divisional Deputy City Sol., for appellants.

A. Martin Herring, A. Martin Herring & Associates, with him, Anthony J. Molloy, Jr., Molloy & McGill, Philadelphia, for appellees.

Michael Churchill, Philadelphia, for amicus curiae, The Guardian Civic League, Inc.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

CRAIG, Judge.

The question of law posed in this case is whether the City of Philadelphia may rank police officer candidates on a civil service eligibility list on the basis of a random selection by computer, rather than upon the basis of test grades, where the city's Home Rule Charter requires the names of successful candidates on eligible lists to be "in the order of their relative excellence," and civil service regulations state that test grades are to be used to establish rank upon the eligibility list.

The City of Philadelphia has appealed the issuance of a preliminary injunction in the nature of a peremptory mandamus by Judge DiBona of the Common Pleas Court of Philadelphia, requiring the city to base the eligibility list rankings of police officer candidates upon test scores, with credit for veterans preference where applicable.

There is no dispute as to the facts established in the record. On July 10, 1989, the city announced an examination for the position of police officer recruit, stating that each applicant would be required to pass the following tests:

Written test
Medical evaluation
Polygraph
Psychiatric evaluation
Background investigation
Drug test
Training program

On-the-job probationary period

The last three items in the list were new measures added in 1989. The announcement specified that applicants would have to pass each test before moving on to the next one; the actual order departed from the above listing only in that the drug test came third, after medical evaluation and before polygraph examination. For the first time, the city was also requiring that applicants have a high school diploma or G.E.D. Also to be noted is that the job title was "police officer recruit," to characterize job status during training and probation, before obtaining the final job classification of police officer.

■ Most significantly, the announcement also declared that "all examinations are pass/fail" and that the eligibility ranking would "be determined objectively by computer," that is, a computer would rank the candidates who passed the written test upon the eligibility list in a random order.

As the trial judge's finding stated, the city previously had scored and graded the written examination numerically, with the successful passing applicants being ranked upon the eligibility list in the order of the highest passing score to the lowest passing score, subject to the veterans preference credit required by law.

The first question to be considered is whether the city's new approach, as embodied in the announcement, was lawful under the city's own civil service regulations. The pertinent provisions of the Civil Service Regulations of the City of Philadelphia are as follows:

9.012 NATURE OF EXAMINATIONS. Every examination for positions within the Civil Service, whether open, limited or promotional, shall be competitive, uniform, and shall be designed to measure fairly *the relative qualifications of competitors.*

. . . .

9.064 CONVERTING SCORES TO GRADES. A successful competitor's final average to be used in establishing *rank on the eligible list shall be determined by*

*converting his score earned on each separate part into a grade* in the following manner: The score earned by each competitor for each part shall be assigned by a rater using any scale approved by the Director for that part and then be converted into grade between 0 and 100(a) by assigning the grade of 70 to the score determined to be the minimum passing score, and (b) in mathematical proportion, by assigning grades between 70.01 and 100 to scores in excess of the score determined to be the minimum passing score, and (c) in mathematical proportion, by assigning grades between 0 and 69.99 to scores less than the score determined to be the minimum passing score, and (d) any grade not less than 69.5 and not more than 69.99 shall remain unchanged but shall be a passing grade.

. . . .

9.067 RANK ON ELIGIBLE LISTS. *Rank on an eligible list shall be in order of relative excellence in the examination as determined by the final passing average grade* plus, in the case of an open competitive list, credits authorized by law for veterans preference, or, in the case of a promotional list, plus credits as prescribed by the Regulations for performance ratings and seniority. (Emphasis added.)

Of course, civil service regulations have long been treated as having the force of law, Act of June 25, 1919, P.L. 581, *as amended,* 53 P.S. § 12633. The record does not indicate, nor does the city's brief contend, that the city has repealed or amended the above-quoted civil service regulations. They remain in force.

■ Moreover, the mere announcement of new policy does not amount to the adoption of a regulation, nor does it effect an amendment of a governing regulation. Proper promulgation of a regulation is necessary. *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 292 A.2d 277 (1972); *DeVito v. Civil Service Commission of Philadelphia,* 404 Pa. 354, 172 A.2d 161 (1961); *Marion v.*

*Green,* 95 Pa.Commonwealth Ct. 210, 505 A.2d 360 (1986), *appeal denied,* 514 Pa. 633, 522 A.2d 560 (1987).

In *Marion,* this court held that the City of Philadelphia could not institute a polygraph testing requirement as a precondition to reinstatement of police officers, without embodying that policy in duly promulgated regulation. Here the City of Philadelphia has once more tried to institute a new procedure by administrative fiat, and the trial court has correctly held that such a method is legally improper and ineffectual.

■ Indeed, in the light of the provisions of Philadelphia's Home Rule Charter, the proposed random selection ranking on eligible lists would be unauthorized even in the absence of the above-quoted language in the regulations. The charter language would prohibit amendment of the regulations in that respect unless the charter itself is revised. The problem is presented by the following language from the Home Rule Charter. The charter requires that the merit selection procedures of Philadelphia shall include:

(c) Open competitive examinations to test *the relative fitness of applicants for the respective positions.*

. . . .

(f) The establishment of eligible lists for appointment and promotion, upon which lists shall be placed the names of successful candidates *in the order of their relative excellence in the respective examinations.* (Emphasis added.)

The charter language, as the trial judge correctly recognized, clearly requires that competitive civil service selection procedure shall test the *relative* fitness of applicants for the respective positions, and that eligible lists shall have the names of successful candidates in the order of their *relative* excellence in the respective examinations.

The city's strongest counterargument stresses the point that the charter calls for testing the relative fitness for the *respective positions.* The city therefore argues that it should not be required to rank police candidates on the

eligibility list according to the Educational Testing Service written examination, which has been used, because the city claims that the ETS examination does not provide a sound method for selecting persons having the particular qualifications needed by police officers. According to the record, there has not been any persuasive study establishing a dependable correlation between relative success in those examination results and relative success in performance as police officers. Accordingly, the city contends, it should be permitted to abandon the written examination as a basis for relative ranking and list candidates without any ranking in terms of relative excellence whatsoever.

Two weaknesses are apparent in the city's contentions. First, because the city proposes to continue using the written examination as a basis for the pass/fail determinations, and because the city is therefore using it to exclude from consideration entirely the candidates who fail the test, the city's own reliance upon it necessarily imports that the test has value, at least in the relative determination of those candidates who deserve further consideration as distinguished from those who are to be excluded at the outset.

Secondly, in the face of a charter requirement that candidates shall be ranked on the basis of relative fitness for respective positions, the city cannot be heard to say that, by choosing an inadequate test, it is therefore exempted from the mandate of its own charter. By merely seeking to discredit the examination of its choice, the city cannot absolve itself from the responsibility of finding a proper basis on which to rank candidates according to relative—not random—standing. Until the city does find or develop a more accurate testing vehicle, the trial judge is justified in requiring that the city continue to use the vehicle which is presently available and is being presently employed.

In this case, the trial court and this court are not passing upon the merits or the policy wisdom of the city's attempted new selection method. Reduced reliance upon the written examination may well be sound and desirable. The record declares that other large cities have taken that course. If

the city concludes that the written examination is afflicted with a cultural bias or other weakness, the city understandably may want to replace it, as a tool for the pass/fail decisions as well as for the order-of-selection ranking.

However, those considerations cannot override the clear present terms of the regulations and Home Rule Charter because the rule of law—not the city's ad hoc ideas—must govern.

■ Of course, in order to sustain a preliminary injunction, the record must show, not only that the right to relief is clear as a matter of fact and law, as we have determined it to be here, but also that the injury is irreparable and the need for relief is immediate. *Township of South Fayette v. Commonwealth*, 477 Pa. 574, 385 A.2d 344 (1978).

■ Appellee Joseph Campana, as a candidate eligible to be ranked upon the eligibility list, unquestionably has standing in this case, and, as the trial judge correctly said, Campana clearly faces irreparable injury and a need for immediate relief in these circumstances. The loss of appellee Campana's opportunity to obtain a relative ranking upon the eligibility list is a matter not subject to recompense by money damages, and it is a matter which calls for immediate relief, in the face of the city's undoubted need and desire to proceed with the selection, hiring and training of police officers.

Judge DiBona's sound preliminary injunction order is affirmed.

### ORDER

NOW, April 30, 1990, the order of the Court of Common Pleas of Philadelphia, dated October 12, 1989, at September Term, 1989, No. 1698, is affirmed.