**MARION CENTER AREA SCHOOL DISTRICT, Appellant**

v.

**MARION CENTER AREA EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Oct. 15, 2009.

Decided Oct. 30, 2009.

---

Zoe E. Babe, Altoona, for appellant.

William K. Eckel, Johnstown, for appellee.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Marion Center Area School District (School District) appeals from an order of the Court of Common Pleas of Indiana County (trial court) sustaining an Arbitrator's (Arbitrator) award of back pay with interest to teachers represented by Marion Center Area Education Association (Teachers) even though the School District fell short of the statutorily mandated 180 days of student instruction, which was caused by less available days within the statutory period because of legal teacher strikes and three days missed due to winter weather.

The Teachers and the School District entered the 2006–2007 school year under a collective bargaining agreement (CBA) that had expired on August 24, 2005. After working the previous year under the terms of the expired CBA, the Teachers went on strike from September 5 through September 29, 2006. After a brief return to work, the Teachers again went on strike from October 16 through October 30, 2006, for a total of 30 available school days missed. Following the second strike, the parties were able to successfully negotiate a new CBA, which was made fully retroactive to the end date of the expired CBA.

Pennsylvania school districts are required to educate their students for at least 180 days per school year to be completed by June 30 of that year.[1] Due to the two strikes, the School District revised

---

1. Section 1501 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 15–1501. Section 15–1501 provides: "All public kindergartens, elementary and secondary schools shall be kept open each school year for at least one hundred eighty (180) days of instruction for pupils. No days on which the schools are closed shall be counted as days taught." Section 16.1 of the Education Empowerment Act 2000–16 mandates that each school year be completed no later than June 30. Section 16.1 is not included in the text of Purdon's Pennsylvania Statutes, but may be found in a note following 24 P.S. § 15–1501.

the school schedule so that 180 days of instruction could be achieved by June 30, 2007, but that schedule had only a two-day margin of error due to weather or unforeseen circumstances foreclosing instruction of students.

School was cancelled due to weather on February 5, 6 and 14, 2007, although the Teachers reported to the middle and high schools on one day before they were notified of the cancellation. As a result, the School District could not complete 180 school days by June 30. The School District petitioned the Secretary of Education for an exception to the 180–day requirement but was denied, and because it only provided 177 or 178 student instructional days, it lost state-subsidy monies for failing to meet the 180–day requirement. Because the Teachers worked only 177 or 178 days, the School District deducted two days pay for the middle and high school teachers and three days pay from the elementary school teachers from their June 29, 2007 paychecks.

The Teachers responded by filing a grievance with the School District on July 10, 2007, contending that the School District's decision to deduct two or three days from their salary violated the CBA because the Teachers were entitled to be paid for 180 days of work regardless of whether the Teachers actually worked all 180 days. The School District denied the grievance, and it proceeded to mandatory arbitration before the Arbitrator. The Arbitrator sustained the grievance ordering the School District to pay the Teachers their full salary, together with interest at six percent per annum from the due date.

In reaching this decision, the Arbitrator relied on Article V, Section 1 of the CBA, which provides:

The length of the school year for employees covered under this agreement shall be one hundred eighty (180) pupil or Act 80 days and three (3) non-pupil contract days. Any days worked in excess of one hundred eighty three (183) days shall be compensated at the contracted hourly rate as per Article VIII, Section 2 of this agreement.

(Reproduced Record at 38.) Reasoning that the CBA provided a mechanism for additional compensation for extra days worked but did not provide a mechanism to deduct pay for fewer days worked, the Arbitrator applied the principle *expressio unius est exclusio alterius*[2] to rule that the CBA mandated 183 days pay (180 student days and 3 non-student days) to be paid to the Teachers regardless of whether those days were actually worked.

The School District appealed the Arbitrator's decision to the trial court, which affirmed the Arbitrator's decision on two grounds. First, the trial court held that the Arbitrator's decision passed the deferential "essence test" standard because it was rationally derived from the CBA; second, the trial court ruled that paying the Teachers for days missed was not a violation of public policy because the required 180 days would have been achieved were it not for the winter weather. The School District then appealed the trial court's decision to this Court.

On appeal, the School District makes two contentions. First, the School District argues that the trial court erred in declining to vacate the Arbitrator's award because the Arbitrator only considered Article V, Section I of the CBA while ignoring Article II, Section 2 of the CBA, which provides: "Nothing contained herein shall

2. This principle means that the expression of one thing implies the exclusion of another thing not mentioned.

be construed to deny or restrict either party such rights as they may have had under the Public School Code of 1949, as amended, or other applicable laws and regulations." According to the School District, Article II, Section 2, in the context of this case, means that the Arbitrator could not ignore or render meaningless the School District's mandate to provide 180 days of instruction to its students. Taken together, these two sections cannot be rationally interpreted under the essence test to mean that the Teachers could be paid for statutorily mandated days they did not work.

▇ With regard to the School District's first contention, a court may vacate an arbitrator's award only if it violates the essence test. Our Supreme Court considered the parameters of the essence test at length in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). In *Cheyney University*, our Supreme Court held:

> [W]e believe that the role for a court reviewing a challenge to a labor arbitration award under Act 195 [3] is one of deference. We hold that in light of the many benefits of arbitration, there is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a collective bargaining agreement. That being the case, courts must accord great deference to the award of the arbitrator chosen by the parties. A fortiori, in the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties. However, there exists an exception to this finality doctrine. The arbitrator's award must draw its essence from the collective bargaining agreement. *Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.* That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 149–150, 743 A.2d at 413. (Emphasis added.) The Court went on to explain that the essence test is one of rationality, not reasonableness, and that a rationality test is even more deferential than a reasonableness test.

> We acknowledge that the terms "rational" and "reasonable" have often been used interchangeably as part of the standard of review. Indeed, in common parlance, the two words have similar meanings. However, we find that in the context of review of an Act 195 labor arbitration award, determining an award to rationally be derived from a collective bargaining agreement connotes a more deferential view of the award than the inquiry into whether the award is reasonable. An analysis of the "reasonableness" of an award too easily invites a reviewing court to ignore its deferential standard of review and substitute its own interpretation of the contract language for that of the arbitrator. Thus,

---

**3.** Pennsylvania Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101—1101.2301.

we find that in this very limited context, a review of the "reasonableness" of an award is not the proper focus.

*Id.* at 150 n. 8, 743 A.2d at 413 n. 8. To further emphasize the point, the Supreme Court admonished, "[D]eference is the touchstone of the appropriate standard of review." *Id.* at 154, 743 A.2d at 416. *See also Penns Manor Area School District v. Penns Manor Area Educational Support Personnel Association,* 953 A.2d 614 (Pa. Cmwlth.2008); *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 250,* 948 A.2d 196 (Pa.Cmwlth.2008).

The parties agree that the first prong of the essence test has been met because the issue of wages and compensation for days worked is within the terms of the CBA calling into question the second prong of the essence test, which is whether the Arbitrator's award can rationally be derived from the CBA. The School District contends that the Arbitrator based his decision to award the Teachers with back pay plus interest on Article V, Section 1 of the CBA, which provides a payment mechanism for additional days worked but not for fewer days worked. Using the principle of *expressio unius est exclusio alterius,* the Arbitrator concluded that the omission of a provision for reducing pay for fewer days worked evidenced both parties' intent that the Teachers would be paid their full salary even if they did not work a full school year.

Regardless of whether one finds the Arbitrator's interpretation of Article V, Section 1 reasonable, the Arbitrator's award must be affirmed if it can be rationally derived from the terms of the CBA. The CBA is a contract, and *expressio unius est exclusio alterius* is a common and accepted method of contract interpretation. The Arbitrator was not irrational to conclude that the inclusion of a method to increase the Teachers' pay for extra days worked, coupled with the absence of a method to decrease the Teachers' pay for fewer days worked, implies that the Teachers' pay cannot be decreased for fewer days worked. While it also would have been rational for the Arbitrator to find the opposite, the essence test does not allow a court to weigh one rational interpretation versus another.

 We turn next to the School District's second argument, which is that the trial court erred by not applying the public policy exception to the essence test that is set forth in *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855 (2007) *(Westmoreland Intermediate Unit I)* because the Arbitrator's award contravened a well-defined and dominant public policy of cooperative dispute resolution designed to promote the statewide policy of providing students with a 180–day school year. In *Westmoreland Intermediate Unit I,* our Supreme Court affirmed the use of the essence test, but decided that it must be subject to a narrow exception that allows a court to vacate an arbitrator's award if it violates the public policy of the Commonwealth.

> More specifically, we hold that upon appropriate challenge by a party, a court should not enforce a grievance arbitration award that contravenes public policy. Such public policy, however, must be well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.

*Westmoreland Intermediate Unit I,* 595 Pa. at 666, 939 A.2d at 865–66.

 In *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees,* 956 A.2d 477 (Pa.Cmwlth.2008), we held that the

public policy exception to the essence test enunciated in *Westmoreland Intermediate Unit I* is met not only by an award that requires the employer to do an act that is illegal or against dominant public policy, but also when it sanctions conduct that was against public policy even if the award itself is otherwise unobjectionable. *See also Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA–NEA,* 977 A.2d 1205 (Pa.Cmwlth.2009) (*Westmoreland Intermediate Unit II*).

 Under the public policy exception, an arbitrator's award cannot be vacated for violating public policy unless it violates or sanctions a well-defined, dominant public policy that is ascertainable by reference to the laws and legal precedents. In *Philadelphia Housing Authority,* we found that the reinstatement of a sexual harasser contradicted the policies of Title VII,[4] and in *Westmoreland Intermediate Unit II,* we found the reinstatement of a classroom assistant who overdosed while using a non-prescribed pain patch that she obtained from a friend contradicted public policies concerning protection of children from drug abuse.

However, here, the School District has not shown that the award of back pay with interest to the Teachers is against public policy just because the strike lessened the period in which the 180–day mandate could be met. Rather, the public policies embodied in legislation support the Teachers' right to strike, even if it lessens the available time to complete the school year. Act 88[5] provides teachers with the right to strike subject to certain conditions. Once the right to strike has been exercised, the Secretary of Education may seek an injunction requiring the teachers to return to work, but only if the strike "would not permit the school entity to provide the [180–day] period of instruction required by section 1501 by June 30." [6]

Here, the Secretary of Education could not seek an injunction because the Teachers' strikes ended in time for the School District to be able to schedule all 180 required days of student instruction. Because the statute allows school teachers to strike so long as the school district can provide 180 days of instruction, it cannot be against public policy for them to exercise that right granted by statute. Moreover, not paying school teachers when some circumstance prevents the 180–day requirement to be met would impermissibly punish them for exercising their right to strike that the legislature saw fit to grant them. Thus, the Arbitrator's award of back pay with interest does not violate *any* public policy, let alone a well-defined and dominant one. We recognize that because the 180–day requirement could not be met, the School District lost state subsidy monies. But it could have protected itself by including in the contract language that the Teachers would only be paid for days worked if the mandated days could not be met, for any reason, whether a snow storm or a school construction project gone awry.

Accordingly, because the Arbitrator's award was rationally derived from the contract, and because it is not against public

---

**4.** Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2002e–2.

**5.** Act of March 10, 1949, P.L. 30, art. XI–A, added by Act of July 9, 1992, P.L. 403, No. 88, 24 P.S. §§ 11–101–A—11–1172–A.

**6.** Section 1161–A of the Public School Code, 24 P.S. § 11–1161–A.

policy, the order of the trial court is affirmed.

Senior Judge KELLEY dissents.

### ORDER

AND NOW, this 30th day of October, 2009, the order of the Court of Common Pleas of Indiana County dated December 9, 2008, is affirmed.