AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EM-PLOYEES (AFSCME) DISTRICT COUNCIL 47, Appellant

v.

CITY OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued May 15, 2012.

Decided July 5, 2012.

Publication Ordered October 2, 2012.

Ralph J. Teti, Philadelphia, for appellant.

Elise M. Bruhl, Philadelphia, for appellee.

BEFORE: SIMPSON, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County (trial court), denying AFSCME District Council 47, Local 2187's (AFSCME) motion to vacate an arbitrator's award. The award determined that pay increases are not part of the status quo, and, therefore, the City of Philadelphia (City) did not violate its collective bargaining agreement (CBA) with AFSCME when it did not provide the increases. AFSCME then filed with the trial court a motion to vacate the arbitrator's award, arguing that the award failed to meet the essence test. The trial court denied AFSCME's motion, and this appeal followed. For the reasons set forth below, we affirm.

As background, AFSCME and the City entered into a CBA, which was effective from July 1, 1992 to June 30, 1996. (Reproduced Record (R.R.) at 135a.) Thereafter, the parties executed four memoranda of agreement, with the final agreement covering the period of July 1, 2008, through June 30, 2009 (2008–2009 CBA). (R.R. at 224a.) The 2008–2009 CBA, through its reference to the initial CBA, incorporated the City's Civil Service Regulations (Regulations) into the agreement between the parties. The Regulations also set forth a pay plan for employees with multiple ranges and steps, outlined in Regulations 6.01–6.10. (Mat 226a, 274a.) Under the 2008–2009 CBA, if an employee showed satisfactory performance over the course of the year, that employee would move to the next step in pay on the anniversary of the first day of employment, until the employee reached the last step in that position. (*Id.* at 37a.) The 2008–2009 CBA also incorporated provisions of the Regulations allowing employees who have remained employed with the City for extended periods to be eligible for longevity increments every five years. (*Id.* at 37a, 155a.) The 2008–2009 CBA provided that if there is a conflict between the Regulations and the contract language, the contract language controls. (*Id.* at 144a.)

In 2009, the City found itself in severe financial straits. In an attempt to relieve the City's budget deficit, the City began negotiating for a new agreement with AFSCME in April 2009. During those negotiations, the City proposed a freeze in step payments and elimination of longevity payments. (*Id.* at 35a.) AFSCME rejected the proposals, and, ultimately, the parties could not reach an agreement upon the expiration of the 2008–2009 CBA. Thereafter, the City circulated a memoran-

dum to all City employees, indicating that there was a temporary suspension of earned pay step increases and longevity payments. (*Id.* at 259a, 352a.) The City's Civil Service Commission then enacted Interim Regulation 31.23. (*Id.* at 351a, 353a.) Interim Regulation 31.23, effective July 6, 2009, provided that no earned pay step increase or increase in longevity payment would be paid to any non-represented employee until the Mayor declares that the City's fiscal situation is sufficiently stable to allow for the reinstatement of such payments.[1] (*Id.* at 353a.) Interim Regulation 31.23 further provided that the rights of represented employees were to be determined by "the applicable collective bargaining agreement and state law." (*Id.*) AFSCME filed a grievance against the City on July 7, 2009, alleging that the elimination of longevity payments and step increases violated the expired CBA. (*Id.* at 253a–255a.)

Arbitration hearings were held in front of Joseph Loewenberg (the Arbitrator). The issues before the Arbitrator were (1) whether the grievance itself was arbitrable, and (2) whether the City violated the CBA by eliminating step increases and longevity payments. (*Id.* at 12a.) At the hearings, the president and chief executive officer and negotiator for AFSCME, Catherine Scott, discussed the nature of the negotiations between the parties. (*Id.* at 32a.) Ms. Scott noted that the negotiations between AFSCME and the City were, generally, in hiatus as the parties could not reach an agreement regarding the freeze of step increases and longevity payments. (*Id.* at 35a.) Ms. Scott testified that, historically, when negotiations continued beyond the expiration of the

CBA, the parties have entered into a contract extension. (*Id.*) During this particular negotiation period (2008–2009), however, the City declined to extend the contract past June 30, 2009. (*Id.* at 36a.) Ms. Scott also explained the pay plan and range of positions. With regard to step increases, Ms. Scott testified that if an employee receives at least a satisfactory performance evaluation each year, the employee would move to the next pay step on the anniversary of his start date. (*Id.* at 37a.) Concerning the longevity schedule, Ms. Scott noted that, prior to 1992, employees received a longevity increase initially after three years of service, again at ten years of service, then every five years thereafter. (*Id.*) However, in 1992, AFSCME negotiated with the City to receive a longevity increase after every five years of service up and until forty years of service. (*Id.*) This pay system is consistent with the pay rate in the Regulations, which were incorporated into the 2008–2009 CBA. (*Id.* at 39a–40a.) Finally, Ms. Scott testified that AFSCME filed a grievance against the City upon notice that it was freezing pay step increases and longevity payments. (*Id.* at 44a.)

Joseph Tolan, the director of the Mayor's Office of Labor Relations, also testified at the arbitration hearings. Mr. Tolan testified that, at the outset of Mayor Michael Nutter's administration, the City encountered serious financial problems. (*Id.* at 77a–78a.) The City froze all City employees' longevity payments and pay step increases in order to cope with the City's financial issues until a new agreement between the parties could be reached. (*Id.* at 84a.) Mr. Tolan noted

---

1. Notably, this memorandum was sent to *all* City employees, and, accordingly, all of the employees were affected by this pay increase freeze. As a result, many of the bargaining units were in negotiation with the City re-

garding this situation. (R.R. at 87a.) While some of those bargaining units have reached an agreement with the City to receive these payments again, other bargaining units are not receiving increases. (*Id.*)

that employee salaries were not decreased; rather, periodic salary adjustments were simply not made. (*Id.* at 85a.) Mr. Tolan reiterated Ms. Scott's testimony regarding the longevity payments and pay step increases. (*Id.* at 116a–117a, 120a.) Further, Mr. Tolan noted that the Regulations are incorporated into the CBA between the City and AFSCME, and to the extent there is a conflict between the Regulations and the CBA, the CBA controls as per the contract language. (*Id.* at 96a, 533a.) Further, Mr. Tolan testified that the Regulations take their authority from the contract language of the CBA. (*Id.* at 89a.) Finally, Mr. Tolan noted that, as part of the City's relationship with AFSCME, the City is required to maintain the status quo. (*Id.* at 108a.)

At the outset, the City maintained that the grievance was not arbitrable as it was an allegation of an unfair labor practice, a complaint in the exclusive jurisdiction of the Pennsylvania Labor Relations Board. The City also argued that it was not required to award pay step increases and longevity payments when the parties are in a state of status quo. AFSCME argued that, because the Regulations are incorporated into the CBA, the City is required to pay the salary increases in order to remain compliant with the Regulations.

The Arbitrator held that the grievance was arbitrable and further that the City did not violate the CBA by failing to award pay step increases and longevity payments. Specifically, the Arbitrator determined that nothing in the Public Employe Relations Act,[2] rulings of the Pennsylvania Labor Relations Board, or court cases prohibits an arbitrator from determining whether an employer violated the status quo upon the expiration of a CBA. (Arbitrator's Opinion, attached to AFSCME's Brief as "Exhibit B" at 5.) In addition, the

Arbitrator relied on the Supreme Court's Opinion in *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976), for the proposition that courts can entertain suits for breach of contract even if the breach was arguably an unfair labor practice. (Arbitrator's Opinion, attached to AFSCME's Brief as "Exhibit B" at 5.) With respect to the status quo, the Arbitrator initially concluded that because the agreement between the parties covered a period from July 1, 2008 through July 30, 2009, and no contract extension had been awarded, the parties were in a state of status quo. Such being the case, the Arbitrator determined that increases are not part of the status quo and are essential to collective bargaining, based on established precedent. (*Id.*) *See Fairview Sch. Dist. v. Unemployment Comp. Bd. of Review,* 499 Pa. 539, 454 A.2d 517 (1982). Accordingly, the Arbitrator reasoned that the City did not violate the status quo by failing to award pay step increases and longevity payments.

AFSCME filed a motion to vacate the Arbitrator's award with the trial court on February 1, 2011. (R.R. at 541a.) AFSCME argued that the Arbitrator's award failed to meet the essence test. Specifically, AFSCME argued that the Regulations were incorporated into the CBA and those Regulations provided for the step increases and longevity payments. Because those Regulations remained in full effect subsequent to the expiration of the 2008–2009 CBA, AFSCME argued that the Arbitrator's award disallowing those payments changed the plain meaning of the terms of the 2008–2009 CBA, which was the most recent and uncontested CBA. (*Id.* at 547a.) AFSCME also argued that the award violated public policy, as it permitted the City to ignore the Regulations.

**2.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–2301.

(*Id.*) The trial court dismissed AFSCME's motion to vacate.

■ On appeal, AFSCME argues that the Arbitrator's award failed to meet the essence test because a freeze on pay step increases and longevity payments are not rationally derived from the CBA. When reviewing an arbitrator's interpretation of a collective bargaining agreement, the proper standard of review for an appellate court is the deferential essence test. *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pennsylvania State Educ. Ass'n*, 978 A.2d 413, 415 n. 2 (Pa. Cmwlth.2009), *appeal denied*, 605 Pa. 677, 989 A.2d 10 (2010). An exceptionally deferential standard is applied because binding arbitration is a highly favored method of dispute resolution. *Id.* "The essence test is a two prong test under which an award should be upheld if (1) the issue as properly defined is within the terms of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement." *Id.* (citing *State System of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof'l Ass'n*, 560 Pa. 135, 743 A.2d 405 (1999)). An arbitrator's findings of fact are not reviewable by an appellate court, "and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville*, 978 A.2d at 415 n. 2. A reviewing court may only vacate an award *when it is indisputably without foundation or fails to logically flow from the agreement. Id.* Based on our narrow scope of review, we are compelled to affirm the trial court's order.

■ We first note that because the 2008–2009 CBA expired, we must consider this matter in terms of the status quo following expiration of the 2008–2009 CBA. *See Coatesville*, 978 A.2d at 417–418. Generally, a public employer must maintain the status quo of the expired contract until a new contract is negotiated. *Id.* at 417 (citing *Northwest Area Sch. Dist. v. Northwest Area Educ. Ass'n*, 954 A.2d 111 (Pa. Cmwlth.2008)). The status quo has been defined as the last actual, peaceable, and lawful noncontested status which preceded the controversy. *Fairview Sch. Dist.*, 499 Pa. at 544, 454 A.2d at 520 (citing *Valley Forge Historical Soc'y v. Washington Memorial Chapel*, 493 Pa. 491, 426 A.2d 1123 (1981); *Commonwealth v. Coward*, 489 Pa. 327, 414 A.2d 91 (1980); *Roberts v. Sch. Dist. of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975)). The status quo in this matter is the 2008–2009 CBA, as it is the last peaceable and lawful uncontested status of the parties. *See Fairview Sch. Dist.*, 499 Pa. at 544, 454 A.2d at 520.

Here, it is essentially undisputed that the first prong of the essence test is satisfied, *i.e.*, that the issue of pay increases is within the terms of the 2008–2009 CBA. This Court is, therefore, left to determine whether the freeze on step increases and longevity payments is rationally derived from the terms of the 2008–2009 CBA during the status quo period under the second prong of the essence test. To do so, we must view the 2008–2009 CBA " 'in light of its language, its context, and any other indicia of the parties' intention.' " *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n PSEA/NEA*, 595 Pa. 648, 660, 939 A.2d 855, 862 (2007) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)).

AFSCME is essentially arguing that the Arbitrator's award failed to draw its essence from the 2008–2009 CBA, which incorporates the initial CBA, by not requiring the City to pay step increases and longevity payments as part of the status

quo after the CBA expired. In other words, AFSCME contends that pay step increases and longevity payments are part of the status quo as contemplated by the parties.

■ In *Fairview School District,* our Supreme Court initially recognized that pay increases are a mandatory subject of bargaining. The Supreme Court, for the first time, addressed the issue of whether failure to pay step increases violated the status quo. Using the persuasive rationale from other courts, our Supreme Court held as follows:

> The underlying rationale for the status quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract. To require [an employer] to pay stepped up salary increases beyond the specified years contained in the expired contract changes the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered.

*Fairview Sch. Dist.,* 499 Pa. at 546, 454 A.2d at 520. With respect to longevity payments, this Court has similarly stated that longevity payments are not part of the status quo. Specifically, we stated that "[b]oth [longevity payments and pay step increases] provide financial rewards based upon an employee's length of service, and . . . the incentives were part of the overall salary structure that was a mandatory subject of bargaining between the parties." *Pa. State Park Officers Ass'n v. Pa. Labor Relations Bd.,* 854 A.2d 674, 681–82 (Pa. Cmwlth.2004), *appeal denied,* 582 Pa. 704,

871 A.2d 194 (2005). Essentially, the status quo following contract expiration does not include the continuation of periodic wage adjustments. *Id.* at 678. *See also Neshaminy Fed'n of Teachers Local Union 1417 v. Pa. Labor Relations Bd.,* 986 A.2d 908 (Pa.Cmwlth.2009) (reinforcing principle that wages and wage increases are mandatory subjects of bargaining and school district did not violate status quo by refusing pay increases).

■ Here, AFSCME is attempting to argue that the Arbitrator's reliance on *Fairview School District* and *Pennsylvania State Park Officers Association* is misplaced. AFSCME posits that the Arbitrator committed such a gross error that this Court should overturn his decision for a failure to meet the essence test. Specifically, AFSCME attempts to distinguish its case from other precedent by arguing that the Regulations, which are incorporated into the CBA, require these pay increases. In addition, AFSCME argues that the Regulations only remove pay increases and longevity payments for non-represented employees, rather than represented employees. We disagree.

Interim Regulation 31.23 stated that pay increases were frozen for non-represented employees and the rights of represented employees would be governed by the applicable CBA and state law. (R.R. at 351a.) As the Arbitrator discussed, when looking to the expired 2008–2009 CBA, there is no language regarding the status quo. Accordingly, the Arbitrator turned to case law to determine the rights of AFSCME employees to receive pay increases during the status quo. As previously addressed, it is well-established that pay increases are not part of the status quo. The Regulations relied on by AFSCME only govern the parties by virtue of the contract language of the CBA. Neither AFSCME nor the City is governed exclusively by the

Regulations. Rather, we must look to the Regulations as part of the expired CBA to determine the status quo. Essentially, the language providing for payment increases is, for all intents and purposes, in the expired CBA. The placement of the language in the Regulations does not distinguish this case from *Fairview School District* and the Arbitrator did not err in relying on *Fairview School District* as controlling precedent. Based on the CBA and case law, payment increases are not part of the status quo. *See Fairview Sch. Dist.,* 499 Pa. at 546, 454 A.2d at 520.[3]

In addition, as analyzed by the Arbitrator and affirmed by the trial court, the expired CBA specifically stated that where conflicts between the Regulations and the CBA arose, the CBA prevailed. As a result, even assuming that there is a conflict between the Regulations and the CBA regarding pay increases, the CBA controls and the Arbitrator correctly turned to case law for guidance on pay increases as the CBA is silent on this issue. Regardless, in our review, we reach the same conclusion as both the Arbitrator and the trial court. Pay increases are not part of the status quo as they are mandatory subjects of bargaining.[4]

Moreover, we agree with the trial court's conclusion that the Arbitrator's decision was rationally derived from the CBA. The trial court concluded that the Interim Regulation provided that "the rights of represented employees shall be determined by the applicable collective bargaining agreement and state law." Stated differently, the Interim Regulation merely reinforced the CBA. Because the CBA is silent as to status quo, the Arbitrator and trial court turned to state law and concluded that pay increases are not part of the status quo as increases are mandatory subjects of bargaining. Further, the fact that the CBA controls in the event of a conflict leads to the rational conclusion that the pay increases are not part of the CBA because those payments are not provided in for in the CBA, but are provided for only in the Regulations.

 Based on the above, we conclude that the Arbitrator's award satisfies the second prong of the essence test, and therefore, must be upheld. The Arbitrator's "findings of fact are not reviewable on appeal" and this Court "may not second-guess his findings of fact or interpretation." *Coatesville,* 978 A.2d at 415 n. 2. Further, "the essence test does not allow this court to weigh one rational interpreta-

**3.** With this argument, AFSCME attempts to argue that the Regulations apply because these Regulations have the force of law. *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5,* 132 Pa.Cmwlth. 631, 574 A.2d 123, 125 (1990). While this is an accurate statement of law, none of the authority cited by AFSCME deals with reference to the Regulations within an expired CBA. This fact is crucial and one that puts the parties in a state of status quo and, based on that status, AFSCME is not entitled to payment increases. AFSCME's argument, therefore, that the Regulations have the effect of law has no relevance.

**4.** Similarly, AFSCME's argument that the Arbitrator's award allows the City to act in

contravention of the Regulations requiring pay increases lacks merit. *See Westmoreland Intermediate Unit # 7,* 595 Pa. at 666, 939 A.2d at 866 (stating that court should not uphold arbitrator's award that is against law or public policy). As discussed, the Regulations, which were only incorporated into the CBA through contract language, do not stand alone outside of the agreement. Rather, the Regulations exist as part of the expired CBA. The fact that the pay increase language is in the Regulations as opposed to the CBA does not affect the conclusion that payment increases are not part of the status quo. Accordingly, we need not address AFSCME's argument further.

tion versus another." *Marion Ctr. Area Sch. Dist. v. Marion Ctr. Area Educ. Ass'n,* 982 A.2d 1041, 1046 (Pa.Cmwlth. 2009). Because it was not irrational for the Arbitrator to conclude that pay increases were not part of status quo following the expiration of the 2008–2009 CBA, the Arbitrator's award was rationally derived from the 2008–2009 CBA.

Given this Court's narrow standard of review and the premise that "[a] reviewing court may only vacate an award when it is indisputably without foundation or fails to logically flow from the agreement," *Coatesville,* 978 A.2d at 415 n. 2, we affirm the trial court's order.

### ORDER

AND NOW, this 5th day of July, 2012, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.