NORTHWEST AREA SCHOOL
DISTRICT, Appellant

v.

NORTHWEST AREA EDUCATION
ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued June 11, 2008.
Decided Aug. 5, 2008.

Richard B. Galtman, New Britain, for appellant.

John G. Audi, Wilkes–Barre, for appellee.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge and SIMPSON, Judge.

OPINION BY President Judge LEADBETTER.

The Northwest Area School District appeals from an order of the Court of Common Pleas of Luzerne County, which de-

nied the School District's petition to vacate an arbitration award. In that award, the arbitrator sustained the Association's[1] grievance, concluding that the School District violated the Collective Bargaining Agreement (CBA) when it failed to move bargaining unit members to the appropriate salary step and column at the beginning of the 2005–06 school year. On appeal, the School District contends that: (1) the award fails to "draw its essence" from the CBA; (2) the award is contrary to law; and (3) the remedy awarded improperly extends beyond the expiration date of the contract. Finding no merit in these contentions, we affirm.

The underlying facts are not in dispute and were stipulated to by the parties before the arbitrator. The Association and the School District were parties to a CBA that was in effect from September 1, 2000, through August 31, 2005. Relevant to the instant appeal, that CBA contained a salary schedule and provided that the schedule "shall remain in force for the period of this Agreement." The salary schedule for each school year was broken into various steps and columns and, according to the CBA: "In each year of the contract, employees will move within the scale." CBA, Appendix A, Section I.[2] CBA, Article IV.

The 2005–06 school year began on August 25, 2005, six days prior to the expira-

---

1. Northwest Area Education Association, PSEA/NEA.

2. Specifically, the CBA states: "The parties agree that wages and salaries to be effected by this Agreement are accurately reflected in Appendix A, made a part of this Agreement, and that the schedule of wages and salaries set forth in Appendix A shall be the schedule which shall remain in force for the period of this Agreement." CBA, Article IV. Section H of Appendix A detailed entitlement to "columnar movement" based upon the completion of additional credits, and Section I set forth the percentage increase in salaries for each year of the contract. According to that

section, the 2000–01 and 2001–02 schedule remained the same as the 1999–00 schedule; the 2002–03 salaries increased by 1.5%; the 2003–04 salaries increased by 1.75%; and the 2004–05 salaries increased by 2.0%. Finally, Appendix A contained a detailed salary schedule for each school year, which provided the specific salaries for each step (e.g., 1, 2, 3 ...) and column (e.g., BA, B+30, Masters, M+12 ...). Presumably, an employee would automatically advance one salary step each year and receive salary increases upon completion of established credit hours (columnar movement).

tion of the parties' CBA.[3] The School District did not increase the bargaining unit members' salaries based upon the steps and columns set forth in the CBA's salary schedule despite that bargaining unit members were eligible for such advancement. As a result, the Association filed a grievance, which was eventually submitted to arbitration for resolution.

At arbitration, the parties stipulated to several facts. The parties stipulated that, past practice demonstrated that step and fall semester column movement was consistently effective the first day of the school year. They also stipulated that past practice consistently demonstrated that, prior to the commencement of the school year, the School District provided each bargaining unit member with notice of his/her step and column placement for the upcoming school year. Since the School District believed that the status quo was in effect, it did not provide these notices to the teachers prior to the start of the 2005–06 school year and no one received "step or column movement" when school began in August. *See* Arbitrator's opinion and award, dated November 2, 2006.

According to the arbitrator,[4] the School District maintained that the parties intended the CBA to cover "school years" and it provided the proper pay for the school years covered by the contract. It further argued that when the 2000–05 CBA ex-

pired prior to execution of a successor agreement, it properly maintained the status quo and did not provide step and column increases for the new school year because there was no contract in place for that year. On the other hand, the Association argued before the arbitrator that the School District prematurely imposed the status quo. According to the Association, the CBA was still in effect when the school year started and under its terms, they were entitled to step and column movement on August 25, 2005, the first day of school.

Based upon the relevant contract provisions, including that, "[i]n each year of the contract, employees will move within the scale,"[5] the parties' stipulation that step and column movement has consistently taken effect on the first day of the school year and, that, the CBA was still in effect when the school year started, the arbitrator concluded that the bargaining unit members were entitled to step and column movement on the scale still in effect when school started and sustained the grievance.[6] Common pleas denied the subsequent petition to vacate and this appeal followed.

On appeal, the School District first argues that the award does not draw its essence from the CBA because it is contrary to the terms expressed therein and unsupported by the past practice of the parties. Specifically, the School District

---

**3.** Although the parties had engaged in bargaining over a new CBA, no agreement was reached prior to the expiration of that 2000–05 CBA.

**4.** The arbitration was not transcribed.

**5.** The arbitrator also noted as relevant the CBA provisions stating that the salaries set forth in Appendix A to the agreement "shall remain in force for the period of this Agreement" and salary schedules "shall be in effect ... for the duration of the contract." *See*

Arbitrator's opinion and award at 3 (detailing relevant provisions of CBA).

**6.** The arbitrator directed the School District to "immediately move all members of the bargaining unit to the appropriate step and column ... and to make all members ... whole for all losses suffered as a result of its failure to make such movement effective from August 25, 2005." Arbitrator's opinion and award at 7.

contends that the contract provisions, including entitlement to step and column movement, clearly apply only to the 2000–01 through 2004–05 *school years.* Similarly, the School District maintains that nothing in the contract can support the conclusion that its terms were intended to extend to the 2005–06 school year. In support of this argument, the School District notes that Appendix A contains five salary schedules, providing for salaries, including step and column movement, for school years 2000–01 through 2004–05. Therefore, the School District argues that it is clear that the provision that employees move within the scale in each year of the contract must be construed to relate only to the school years covered by the agreement. Finally, the School District maintains that the parties' stipulation, that step and column movement was consistently effective on the first day of the school year, is not determinative because the record lacks any evidence that the parties agreed that such practice has occurred in circumstances similar to the present. These arguments are unavailing in light of our restricted standard of review.

 It is well-settled that in reviewing an arbitration award under the Public Employe Relations Act (PERA),[7] we apply the "essence test," a standard which requires great deference to an arbitrator's interpretation of the CBA. See, e.g., *Westmoreland Intermed. Unit # 7 v. Westmoreland Intermed. Unit # 7 Classroom Asst. Educ. Support Pers. Ass'n, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855 (2007); *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999). This analysis requires a determination of whether the issue, as properly defined, falls within the terms of the CBA, and if so, whether the arbitrator's inter-

pretation of the CBA is rationally derived therefrom. *Westmoreland,* 595 Pa. at 661–62, 939 A.2d at 863. In *Westmoreland,* our Supreme Court emphasized the deference required, stating:

> The arbitrator's award must be respected by the judiciary if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention....
>
> ....
>
> [A] court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]. Regarding a review for reasonableness, we rejected such review, finding that it would invite a reviewing court to substitute its own interpretation of the contract language for that of the arbitrator. Therefore, we instructed that a court should not engage in merits review of the matter. Indeed, after our reaffirmation of the circumscribed essence test we made it eminently clear that the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is manifestly unreasonable.

*Id.* at 660–61, 939 A.2d at 862–63 (quotations and citations omitted). Clearly, then, we may not substitute our judgment for that of the arbitrator, even if our interpretation of the CBA differs from that of the arbitrator.

██ Here, while the School District's arguments certainly support a logical interpretation of the CBA, we cannot conclude that the arbitrator's interpretation is not rationally derived from, nor genuinely and indisputably lacks a foundation in, the CBA. As the arbitrator noted, the CBA

---

**7.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

entitled members to step and column movement, the CBA was still in effect when the school year started, step and column movement historically took effect on the first day of the school year, and the agreement provided that in each "year" of the contract (as opposed to "school year"), employees shall move within the scale. Moreover, as the Association notes, the CBA does not expressly provide that its terms are limited to the 2000–05 school years, and, if the contract terms were not intended to apply fully until its expiration date regardless of whether a new school year had commenced, it could have been drafted to so state. Finally, we note that while the arbitrator awarded step and column advancement within the existing 2004–05 scale, he did not direct any increase in the scale itself. Accordingly, under the essence test, we must accept the arbitrator's interpretation.[8]

 The School District also contends that the award must be vacated because it is contrary to law.[9] Relying on *Fairview School District v. Unemployment Compensation Board of Review*, 499 Pa. 539, 454 A.2d 517 (1982), and *Pennsylvania State Park Officers Association v. Pennsylvania Labor Relations Board*, 854 A.2d 674 (Pa.Cmwlth.2004), *appeal denied*, 582 Pa. 704, 871 A.2d 194 (2005), the School District asserts that the arbitrator erred as a matter of law in interpreting the CBA in a manner which failed to maintain the status quo. The School District maintains that the step and column placement existing at the end of the 2004–05 school year constitutes the status quo because the contract did not expressly grant entitlement to step and column advancement beyond that school year. The School District also asserts that the award is contrary to law because it precluded the exercise of bargaining rights over salaries, an issue at impasse, thereby effectively imposing binding interest arbitration on the parties.[10] We disagree that the arbitrator erred as a matter of law.

In order to determine whether a lockout or strike occurred for purposes of teacher eligibility for unemployment compensation benefits during a work stoppage, our Supreme Court, in *Fairview School District*, addressed whether the school district's failure to move personnel up a pay step under an *expired* contract, which had been extended during contract negotiations, constituted a change in the status quo, thereby resulting in a lockout. Similarly to the School District here, the school district in *Fairview* argued that the stepped-up salary schedules in the expired contract applied to the specific years covered by the contract and increases beyond those years were not bargained for, nor contemplated. The school district also argued that requiring step increases under the expired contract would undermine bargaining over

---

8. Moreover, because the arbitrator's construction is rationally derived from the existing CBA, we reject the School District's contention that the arbitrator "implemented a binding determination as to a matter still subject to collective bargaining." *See* School District's appellate brief at 21.

9. Pursuant to the Uniform Arbitration Act, a court reviewing a grievance arbitration award under PERA may "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judg-

ment or a judgment notwithstanding the verdict." *See* 42 Pa.C.S. § 7302(d)(2). *See also State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999); *Pa. Labor Rels. Bd. v. Bald Eagle Area Sch. Distr.*, 499 Pa. 62, 451 A.2d 671 (1982); *United Sch. Dist. v. United Educ. Ass'n*, 782 A.2d 40 (Pa.Cmwlth. 2001).

10. We note that the assertion of impasse lacks support in the record.

salary for the subsequent years and effectively would result in retroactive pay increases.

The Supreme Court concluded that the district's failure to pay stepped-up salaries in the interim period did not constitute a disruption in the status quo and, therefore, the teachers were not entitled to unemployment compensation benefits.[11] In doing so, the court opined:

> The underlying rationale for the status quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract. To require the School District to pay stepped up salary increases beyond the specified years contained in the expired contract changes the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered.

499 Pa. at 546–47, 454 A.2d at 521.

In *Pennsylvania State Park Officers Association,* this court addressed whether the Commonwealth's failure to pay longevity wage increases mandated by expired contracts constituted unfair labor practices for purposes of Act 111[12] and PERA.[13] Since employers are required to maintain the status quo with respect to wages, a mandatory subject of bargaining, during contract hiatus and negotiation in order to avoid an unfair labor practice charge, resolution of the issue made it necessary to determine whether the status quo entailed freezing wages at the level existing on contract expiration or increasing wages pursuant to automatic wage escalators contained in the expired agreements.[14] The court found *Fairview* dispositive and concluded that maintaining the status quo did not mandate automatic wage increases. We also stressed that to define the status quo in a manner which provided for wage increases following contract expiration "would allow employees to gain an unfair advantage over their public employers by obtaining the very wage increases under negotiation[, which would], discourage good faith negotiations and compliance with [statutory] deadlines." 854 A.2d at 682.

After review, we conclude that both cases are distinguishable and, therefore, do not command the conclusion that the arbitrator's award is contrary to law. Unlike the instant case, which involves interpretation of an existing CBA and resolution of rights arising thereunder through the grievance process, *Fairview* and *Pennsylvania State Park Officers Association* involved the enforcement of statutory rights (*i.e.,* right to unemployment compensation or to collectively bargain in good faith), which hinged on the court's determination of what constituted the status quo and of which party disrupted the status

---

**11.** *Accord Union City Sch. Distr. v. Unemployment Comp. Bd. of Review,* 499 Pa. 548, 454 A.2d 522 (1982) (relying on *Fairview*).

**12.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.27. Act 111 provides for collective bargaining between policemen, firemen and their public employers.

**13.** Based upon *Fairview,* the Labor Relations Board concluded the employers had not committed unfair labor practices.

**14.** The status quo has been defined as the "last actual, peaceable and lawful non-contested status which preceded [a] controversy." *Pennsylvania State Park Officers Ass'n,* 854 A.2d at 681 (quoting *Fairview,* 499 Pa. at 544, 454 A.2d at 520).

quo by its conduct following contract expiration; here, in contrast, we are reviewing arbitral interpretation of an *unexpired* collective bargaining agreement. This procedural distinction is not only important but dispositive. It is beyond question that no further step and column movements were required to maintain the status quo after expiration of the CBA in this case, but that is not what the arbitrator ordered. He simply interpreted the District's obligations under the CBA during a period when it continued in force, and as explained above, based upon our deferential standard of review, we must accept that interpretation. Moreover, negotiation over the terms of a successor agreement does not suspend an *unexpired* CBA, nor preclude an arbitrator from enforcing rights provided thereunder merely because those same benefits are currently the subject of renegotiation.

█ Finally, relying on *Midland Borough School District v. Midland Education Association PSEA*, 532 Pa. 530, 616 A.2d 633 (1992), the School District maintains that the award is legally erroneous because the remedy extends beyond the expiration of the agreement. In *Midland*, while a CBA was still in effect, the school district entered into an agreement with a neighboring school district to transfer all the students from one if its schools to that other district on a tuition basis, thereby eliminating all teaching positions in the grades affected and resulting in building closure. The union filed a grievance, contending that the school district violated the CBA by subcontracting-out bargaining unit work. Ultimately, an arbitrator sustained the union's grievance and, after the contract had expired, directed the school district to, inter alia, rescind the contract with the other district and return the teachers to work. Common pleas vacated that part of the award rescinding the contract and directing the school district to rehire the teachers. Both this court and our Supreme Court affirmed on appeal. In doing so, the Supreme Court emphasized that an arbitrator's authority is defined and limited by the terms of the agreement and the award must represent a legitimate interpretation thereof. The court did not hold that all post-expiration relief exceeds an arbitrator's jurisdiction. In fact, the court noted that, "under certain circumstances particular remedies awarded may in fact continue in effect beyond the expiration of the controlling agreement. . . ." 532 Pa. at 541 n. 3, 616 A.2d at 639 n. 3. The court concluded, however, that the remedy in those circumstances exceeded the arbitrator's jurisdiction and failed the essence test because it required the school district to open a closed school and re-employ teachers two years after the agreement had expired. Clearly, the remedy exceeded the relevant CBA's temporal parameters, which bound the parties and limited the arbitrator.

*Midland* is completely inapposite. Here, the arbitrator did not award a remedy beyond the temporal parameters of the CBA. Rather, the arbitrator enforced the terms of the CBA and directed step and column movement that should have occurred prior to the expiration of the CBA. Accordingly, we conclude that the arbitrator did not exceed his jurisdiction under the agreement.

Based upon the foregoing, common pleas' order is affirmed.

### *O R D E R*

AND NOW, this 5th day of August, 2008, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby AFFIRMED.