## LUZERNE INTERMEDIATE UNIT NO. 18, Appellant

### v.

## LUZERNE INTERMEDIATE UNIT EDUCATION ASSOCIATION, PSEA/NEA.

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.

Decided April 3, 2014.

John G. Audi, Jr., Pittston, for appellant.

Jeffrey Husisian, Wilkes Barre, for appellees.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and COLINS, Senior Judge.

## OPINION BY Judge BROBSON.

Appellant Luzerne Intermediate Unit No. 18 (LIU) appeals from an order of the Court of Common Pleas of Luzerne County (trial court), which denied LIU's petition to partially vacate an arbitration award. In the award, an arbitrator sustained the Luzerne Intermediate Unit Education Association, PSEA/NEA's (Association) grievance in part and denied the grievance in part. In so doing, the arbitrator directed LIU to provide the following to the Association's bargaining unit members for the 2010–2011 work year: (1) appropriate salary step and column increases, (2) a new salary schedule using a particular formulary process, and (3) corresponding pay increases, retroactive to the start of the 2010–2011 work year on August 23, 2010. For the reasons set forth below, we now affirm.

The facts as found by the arbitrator are as follows. LIU is a public educational facility that provides services to students with special needs in twelve school districts (Component School Districts) located throughout Luzerne County. (Reproduced Record (R.R.) at 63a.) The Association represents a bargaining unit of professionals who work for LIU. (*Id.*) LIU and the Association were parties to a 2005–2010 CBA, under which LIU paid the Association members pursuant to a salary schedule. (*Id.* at 64a.) The salary schedule determines annual pay on the basis of two factors: (1) the employee's years of experience with LIU (steps), and (2) the employee's educational background (columns). (*Id.*)

The salary schedules do not contain specified levels of compensation, but rather entail a "formulary process" for calculating the amounts set forth therein. (*Id.*) Prior to 2010, the formulary process was historically applied each year during July to mid-August. (*Id.*) The formulary process takes the salary schedule from each of the Component School Districts serviced by LIU and averages the numbers. (*Id.*) In using the formulary process, LIU would obtain the salary schedules from the Component School Districts and share the information with the Association. (*Id.* at 64a–65a.) The parties would agree on the averages to be used and, after the salary schedule had been finalized, it would be distributed to the employees. (*Id.* at 65a.) The new pay rates were effective on the first day of the new work year. (*Id.*) Notably, although proposals had been made to alter or eliminate the formulary process during each round of bargaining, use of the formulary process remained constant through the 2005–2010 CBA. (*Id.*)

In December 2009, the parties entered into negotiations for a successor CBA, but as of August 31, 2010, the parties had not reached an agreement on a new CBA. (*Id.* at 64a–65a.) Nevertheless, the Association members continued to work without a contract into the 2010–2011 school year.

(*Id.* at 65a.) By early September 2010, the Association staff had not received step or column movement. (*Id.*) Moreover, LIU did not agree to construct salary schedules different from those which had existed for the 2009–2010 school year, based upon the formulary process. (*Id.*) Consequently, on September 7, 2010, the Association submitted a grievance in protest of their members' salaries being frozen, which grievance was eventually submitted to arbitration for resolution.

On March 20, 2013, the arbitrator issued an award sustaining in part and denying in part the grievance, based on the language of the 2005–2010 CBA and the law concerning status quo. (*Id.* at 88a–89a.) In so doing, the arbitrator determined that the applicable sections of the 2005–2010 CBA included Article VII (relating to negotiations of a successor agreement),[1] Article XXVII (relating to wages and salary provisions),[2] Article XXIX (relating to statutory savings clause),[3] and Article XXX (relating to duration of agreement).[4] (R.R. at 62a–63a.)

The arbitrator first concluded that LIU was required to provide step and column movement to the Association's members at the start of the 2010–2011 work year. The arbitrator reasoned that the start of the 2010–2011 work year was August 23, 2010, for bargaining unit members and that a CBA was in place at that time, as the 2005–2010 CBA did not expire until August 31, 2010. (*Id.* at 81.) The arbitrator further reasoned that the contract provided for step and column movement each work year and that, as a result, the contractual entitlement of eligible employees to the step and column movement for the 2010–2011 work year had been triggered

1. Article VII of the 2005–2010 CBA provides that "[t]his Agreement shall not be modified in whole or in part by the parties except by an instrument, in writing, duly executed by both parties." (R.R. at 20a.)

2. Article XXVII of the 2005–2010 CBA outlines the formulary process explained above in detail. It also provides, in relevant part:
   12. Hours: The normal work day, work week, and work year for the bargaining unit members will be contingent upon the work day, work week, and work year of the school(s) or building(s) to which they are assigned. The work year is 185 days plus one (1) additional in-service day scheduled by the LIU # 18 Board, which will be scheduled prior to the beginning of the school year and when no other district is in session.
   (R.R. at 45a.) The arbitrator found that for the 2010–2011 school year, the in-service day occurred on August 23, 2010, and that some Association members worked several other days prior to August 31, 2010. (*Id.* at 65a.) Further, we note that the arbitrator seems to use the term "work year" and "school year" interchangeably in reference to the time periods at issue in this appeal. Although the 2005–2010 CBA does define the term "work year" as set forth above, it does not appear to define the term "school year." Nevertheless, we note that any difference between the two terms is irrelevant for purposes of our analysis.

3. Article XXIX of the 2005–2010 CBA provides:
   Nothing contained herein shall be construed to deny or restrict to any employee such rights as may exist under the [Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101 through 27–2702,] or other applicable laws and regulations. The rights granted to employees hereunder shall be deemed to be in addition to those provided elsewhere.
   (R.R. at 45a.)

4. Article XXX of the 2005–2010 CBA provides, in relevant part:
   This Agreement shall be effective as of September 1, 2005, and shall continue in effect until August 31, 2010 subject to the Association's right to negotiation over a successor Agreement as provided in ARTICLE I. This Agreement shall not be extended orally and it is expressly understood that it shall expire on the date indicated.
   (R.R. at 46a.)

prior to the contract expiring and the status quo taking effect as required by law. (*Id.*) The arbitrator indicated that there was no past practice that would negate the application of the clear contract language and that, to the contrary, it was undisputed that teachers had always received credit for step and column movement on the first day of the new work year. (*Id.* at 81a–82a.) The arbitrator further noted that while LIU stressed that there had never before been a situation where a CBA was not in place for a new school year, that showed at most that no past practice existed at all. (*Id.*) The arbitrator further reasoned that it was untenable that the Association's members would receive step and column movement for days worked prior to August 31, 2010, and then have that movement taken away from them for days worked after that date, when the status quo took effect. (*Id.*)

The arbitrator next concluded that LIU was required to issue a new salary schedule for the 2010–2011 work year using the formulary process. The arbitrator concluded that prior to August 31, 2010, LIU was obligated to apply the CBA as written for purposes of determining proper compensation, and that the CBA did not provide that the formulary process was to be used only through the 2009–2010 school year. (*Id.* at 84a–85a.) The arbitrator reasoned that LIU had an obligation to apply the formulary process by August 23, 2010, the first day of the 2010–2011 work year, in order to insure that bargaining unit employees were compensated pursuant to the terms of the CBA that was still in effect at the time. (*Id.* at 85a.) The arbitrator further determined that it was that level of wages and salaries that should have been in place approximately one week later when the status quo took effect. (*Id.*) The arbitrator explained that any other conclusion would be inconsistent with the terms of the CBA as written and with

past practice, as the formulary process was always applied by LIU during the summer so that employees could be timely informed of the salaries they would receive upon the start of the new work year, which was typically an in-service day occurring approximately one week before August 31. (*Id.*) The arbitrator noted that there was also no expectation by anyone that employees would be paid one rate of compensation for days worked through August 31, 2010, and another (lesser) rate for the rest of the work year. (*Id.*) Accordingly, the arbitrator concluded that the Association had met its burden of establishing that LIU was obligated to establish a new salary schedule for the 2010–2011 school year, as required by the formulary process set forth in Article XXVII of the CBA. (*Id.* at 86a.)

The arbitrator, however, rejected the Association's contention that the grievance should also be sustained for the 2011–2012 and 2012–2013 school years. (*Id.*) The arbitrator disagreed with the Association's argument that the status quo required that LIU annually apply the formulary process in perpetuity, or until the parties agreed upon a new contract. (*Id.*) The arbitrator found that the status quo was the wages and salaries the bargaining unit should have been receiving when the contract expired on August 31, 2010, and that that level of wages and salaries was to be maintained until the parties reached agreement on a new CBA. (*Id.*) The arbitrator reasoned that allowing use of the formulary process for perpetual changes to the salaries of bargaining unit members would enable bargaining unit members to forever receive the average salaries of the Component School Districts without ever again bargaining a CBA. (*Id.* at 87a–88a.) The arbitrator further noted that the balance of power between the parties would not be maintained best by such a decision. (*Id.*)

Thus, the arbitrator directed LIU to grant step and column increases and issue a new salary schedule, honoring the formulary process, for the 2010–2011 work year. (*Id.* at 89.) The arbitrator further directed LIU to grant appropriate pay increases that reflect the step and column movement and the new salary schedule for the 2010–2011 work year, retroactive to the start of that work year on August 23, 2010. (*Id.*)

Thereafter, LIU filed a petition to vacate partially the arbitration award, which the Association opposed. By order dated July 15, 2013, the trial court denied the petition. LIU then appealed to this Court.

On September 20, 2013, in accordance with Pennsylvania Rule of Appellate Procedure 1925(a), the trial court issued an opinion in support of its order. The trial court explained that the essence test was met in this instance, as it was clear that the issues before the arbitrator fell within the terms of the 2005–2010 CBA and that the arbitrator's interpretation was rationally derived from the 2005–2010 CBA. (*Id.* at 247a.) The trial court further explained that the instant matter was very similar to that of *Northwest Area School District v. Northwest Area Education Association*, 954 A.2d 111 (Pa.Cmwlth.2008) (en banc), a case which the arbitrator also noted in his decision, and that the trial court's order should be affirmed based on *Northwest*. (R.R. at 247a.)

On appeal,[5] LIU argues that the award fails to draw its essence from the 2005–2010 CBA and is contrary to law. Relying upon *Midland Borough School District v.*

*Midland Education Association, PSEA*, 532 Pa. 530, 616 A.2d 633 (1992), LIU also argues that the award improperly extends beyond the expiration date of the 2005–2010 CBA and that the arbitrator exceeded his jurisdiction in issuing the award.[6]

We first address LIU's argument that the arbitrator's award fails to draw its essence from the 2005–2010 CBA. When reviewing an arbitrator's interpretation of a CBA, the proper standard of review for an appellate court is the deferential essence test. *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/ Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n. 2 (Pa.Cmwlth.2009), *appeal denied*, 605 Pa. 677, 989 A.2d 10 (2010). An exceptionally deferential standard is applied because binding arbitration is a highly favored method of dispute resolution. *Id.* "The essence test is a two prong test under which an award should be upheld if (1) the issue as properly defined is within the terms of the [CBA] and (2) the arbitrator's award can be rationally derived from the [CBA]." *Id.* An arbitrator's findings of fact are not reviewable by an appellate court, "and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Id.* A reviewing court may only vacate an award when it is indisputably without foundation or fails to logically flow from the agreement. *Id.*

In arguing that the award does not draw its essence from the 2005–2010 CBA,

**5.** For purposes of clarity, we have reorganized and reordered LIU's issues and related arguments.

**6.** The Association argues, and the trial court agreed in its Rule 1925(a) opinion, that LIU waived all issues on appeal by failing to allege any errors on behalf of the trial court in LIU's statement of errors complained of on appeal,

which LIU filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). As LIU's arguments can reasonably be interpreted as a challenge to the trial court's denial of LIU's petition to partially vacate the arbitrator's award, which challenge LIU makes on the basis of the arbitrator's alleged errors, we decline to find waiver in this instance.

LIU contends that the award is not supported by the evidence. Specifically, LIU argues that the award is not supported by, and is contrary to, the terms of the 2005–2010 CBA and is further unsupported by any past practice of the parties. LIU contends that the terms of the agreement clearly apply only to the 2005–2006 through 2009–2010 school years and that no provision in the agreement supports the conclusion that its terms apply to the 2010–2011 school year. Moreover, LIU argues that the arbitrator's determination that step and column movement was consistently effective on the first day of the school year was improper and that there is no evidence in the record to establish that such a practice occurred in circumstances similar to those present here, as a school year had never before started without a contract in place.

In light of our standard of review, we reject LIU's argument. Our decision in *Northwest* is particularly instructive in this regard. In that case, the Northwest Area Education Association, PSEA/NEA (Northwest Association) and the Northwest Area School District (Northwest School District) were parties to a CBA that was in effect from September 1, 2000, through August 31, 2005. The CBA included a salary schedule, which was to remain in force for the period of the CBA and was broken into steps and columns. The CBA also provided that employees were to move within the scale in each year of the contract. Although the 2005–2006 school year began on August 25, 2005, six days before the CBA expired, Northwest School District did not provide salary increases to employees pursuant to the terms of the CBA. As a consequence, Northwest Association filed a grievance, which was eventually submitted to arbitration. The arbitrator sustained the grievance, "concluding that [Northwest] School District violated the CBA when it failed to move bargaining unit members to the appropriate salary step and column at the beginning of the 2005–06 school year." *Northwest*, 954 A.2d at 112. After the court of common pleas denied the subsequent petition to vacate, this Court affirmed.

Among the arguments made by Northwest School District on appeal was the contention that the award did not draw its essence from the CBA, because the award was contrary to the terms expressed therein and unsupported by the past practice of the parties. Northwest School District based this contention on virtually the same observations regarding the CBA and practices at issue there as LIU makes regarding the 2005–2010 CBA and practices at issue here. Nevertheless, we rejected Northwest School District's contention based on our restricted standard of review, observing as follows:

Here, while [Northwest] School District's arguments certainly support a logical interpretation of the CBA, we cannot conclude that the arbitrator's interpretation is not rationally derived from, nor genuinely and indisputably lacks a foundation in, the CBA. As the arbitrator noted, the CBA entitled members to step and column movement, the CBA was still in effect when the school year started, step and column movement historically took effect on the first day of the school year, and the agreement provided that in each "year" of the contract (as opposed to "school year"), employees shall move within the scale. Moreover, as [Northwest] Association notes, the CBA does not expressly provide that its terms are limited to the 2000–05 school years, and, if the contract terms were not intended to apply fully until its expiration date regardless of whether a new school year had commenced, it could have been drafted to so state. Finally,

we note that while the arbitrator awarded step and column advancement within the existing 2004–05 scale, he did not direct any increase in the scale itself. Accordingly, under the essence test, we must accept the arbitrator's interpretation.

*Id.* at 114–15.

Similarly, the arbitrator here noted that the 2005–2010 CBA provided for step and column movement and the establishment of a salary schedule using the formulary process. Moreover, the 2005–2010 CBA was still in effect when the 2010–2011 work year started on August 23, 2010. Further, step and column movement historically took effect on the first day of the work year, the formulary process was historically applied each year during July to mid-August, and the new pay rates were effective on the first day of the new work year. Additionally, the wages and salary provisions of the 2005–2010 CBA largely make reference to "each year" with regard to step and column movement and the formulary process.[7] (R.R. at 42a–43a.) Finally, the 2005–2010 CBA does not expressly provide that its terms are limited to the 2005–2010 school years. As noted by this Court in *Northwest,* "if the contract terms were not intended to apply fully until its expiration date regardless of whether a new school year had commenced, it could have been drafted to so state." *Northwest,* 954 A.2d at 115. Thus, we conclude that the arbitrator's interpretation of the CBA is rationally derived from, and is not

indisputably and genuinely without foundation in, the 2005–2010 CBA. As such, we must accept the arbitrator's interpretation.[8]

LIU also argues that the arbitrator's award did not draw its essence from the 2005–2010 CBA because the arbitrator erroneously failed to identify particular provisions of the 2005–2010 CBA that were, in fact, violated by LIU and the basis upon which LIU violated those provisions. LIU contends that although the arbitrator identified Article XXVII in his discussion and award, the arbitrator's decision cannot be said to have been derived from the 2005–2010 CBA in the absence of a stated contractual basis for the ultimate determination found in the award.

A review of the award reveals that the arbitrator cited and primarily relied upon Articles XXVII and XXX in rendering his decision. Article XXVII outlines, *inter alia,* the method of determining the salary schedules using the formulary process and the manner in which the Association's members were to be moved on those salary schedules. Article XXX provides that the 2005–2010 CBA was to remain in effect until August 31, 2010. In concluding that LIU was required to provide the Association's members with appropriate step and column increases, a new salary schedule using the formulary process, and corresponding pay increases for the 2010–2011 work year, it is clear that LIU violated Articles XXVII and XXX by failing to do so, as the terms of the 2005–2010 CBA

---

7. The 2005–2010 CBA provisions describing step and column movement and the formulary process also use other language with regard to time, including one use of the phrase "school year." (R.R. at 43a.) Nevertheless, these varying references are not enough to lead us to conclude that the arbitrator's interpretation fails to meet the highly deferential essence test.

8. We further observed in *Northwest* that "because the arbitrator's construction is rationally derived from the existing CBA, we reject [Northwest] School District's contention that the arbitrator 'implemented a binding determination as to a matter still subject to collective bargaining.'" *Northwest,* 954 A.2d at 115 n. 8. To the extent that LIU raises the same argument here, we reject that argument on the basis articulated in *Northwest.*

were still in effect at the time such items were due. As such, those provisions constituted the contractual basis for the award. We conclude, therefore, that LIU's argument in this regard is without merit.

■ We next address LIU's argument that the arbitration award is contrary to law.[9] In support of this argument, LIU contends that the award is erroneously predicated upon a misunderstanding and misapplication of the principles of maintaining status quo.[10] LIU argues that the proper application of status quo requires that, in maintaining the existing relationship between the parties at the expiration of the 2005–2010 CBA, LIU was to apply the same salary schedule and step and column placement in effect as of the end of the 2009–2010 school year, rather than create a new salary schedule and continue step and column movement beyond that school year. In support of this argument, LIU contends that the 2005–2010 CBA explicitly applies only through the end of the 2009–2010 school year and that, as a consequence, the status quo actually came into effect at the end of that school year. In putting forth this argument, LIU relies upon *Fairview School District v. Unemployment Compensation Board of Review,* 499 Pa. 539, 454 A.2d 517 (1982), *Union City School District v. Unemployment Compensation Board of Review,* 499 Pa. 548, 454 A.2d 522 (1982), and *Pennsylvania State Park Officers Association v. Pennsylvania Labor Relations Board,* 854

A.2d 674 (Pa.Cmwlth.2004), *appeal denied,* 582 Pa. 704, 871 A.2d 194 (2005).

We reject LIU's argument that the award is erroneously predicated upon a misunderstanding and misapplication of the principles of maintaining status quo. Again, in *Northwest,* this Court rejected the same argument now advanced by LIU. In so doing, we observed:

> After review, we conclude that [*Fairview* and *Pennsylvania State Park Officers Association*] are distinguishable and, therefore, do not command the conclusion that the arbitrator's award is contrary to law. Unlike the instant case, which involves interpretation of an existing CBA and resolution of rights arising thereunder through the grievance process, *Fairview* and *Pennsylvania State Park Officers Association* involved the enforcement of statutory rights (*i.e.,* right to unemployment compensation or to collectively bargain in good faith), which hinged on the court's determination of what constituted the status quo and of which party disrupted the status quo by its conduct following contract expiration; here, in contrast, we are reviewing arbitral interpretation of an *unexpired* [CBA]. This procedural distinction is not only important but dispositive. It is beyond question that no further step and column movements were required to maintain the status quo after expiration of the CBA in this case, but that is not what the arbitrator or-

9. "Pursuant to the Uniform Arbitration Act, [42 Pa.C.S. §§ 7301–7320,] a court reviewing a grievance arbitration award under [the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301 (PERA),] may 'modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwith-

standing the verdict.'" *Northwest,* 954 A.2d at 115 n. 9 (quoting 42 Pa.C.S. § 7302(d)(2)).

10. "The status quo has been defined as the 'last actual, peaceable, and lawful noncontested status which preceded [a] controversy.'" *Northwest,* 954 A.2d at 116 n. 14 (alteration in original) (quoting *Pa. State Park Officers Ass'n v. Pa. Labor Relations Bd.,* 854 A.2d 674, 681 (Pa.Cmwlth.2004), *appeal denied,* 582 Pa. 704, 871 A.2d 194 (2005)).

dered. He simply interpreted [Northwest School] District's obligations under the CBA during a period when it continued in force, and as explained above, based upon our deferential standard of review, we must accept that interpretation.

*Northwest,* 954 A.2d at 116–17 (emphasis in original).[11]

■ As noted by the Association, the cases cited by LIU are inapposite to this case as well, in that here the arbitrator did nothing more than interpret LIU's "obligations under the CBA during a period when it continued in force," and we are simply reviewing the arbitrator's interpretation of that unexpired CBA.[12] As such, we conclude that the arbitration award is not contrary to law in that the award is erroneously predicated upon a misunderstanding and misapplication of the principles of maintaining status quo.

LIU also argues that the award is contrary to law in that it is inconsistent in its application of the law. LIU contends that in ruling that adjustments to step and column movement and the salary schedule were to be made for the 2010–2011 school year, but not for the 2011–2012 and 2012–2013 school years, the arbitrator reached a legally inconsistent conclusion. LIU argues that under the principles of status

quo, either Article XXVII of the CBA is not applicable to any school year beyond the expiration date of the CBA, or it is applicable in perpetuity until a successor agreement is reached. LIU further argues that the arbitrator's conclusion has no basis in law, and that under a correct and consistent application of the law, salary schedule increases and step and column movement cannot exist beyond the expiration date of the CBA.

As explained earlier, the arbitrator awarded (1) step and column movement, (2) the issuance of a new salary schedule based on the formulary process, and (3) corresponding pay increases retroactive to the start of the work year to the Association's bargaining unit members for the 2010–2011 work year. In so doing, the arbitrator issued the award based on his interpretation of the 2005–2010 CBA, as the terms of that CBA were still in effect at the start of the 2010–2011 work year and the status quo had not yet taken effect. The arbitrator's award in this regard is legally supported by the *Northwest* decision. Further, the arbitrator denied the grievance as to the 2011–2012 and 2012–2013 school years, finding that the status quo was the wages and salaries the Association's bargaining unit members should have been receiving when the 2005–2010 CBA expired and that that level of wages

---

11. Moreover, it appears that the Court in *Northwest* was not persuaded to reach a contrary conclusion based on *Union City,* as the Court cited the case in a footnote only to point out its similarity to and reliance upon *Fairview. See Northwest,* 954 A.2d at 116 n. 11.

12. We further reject LIU's argument that the status quo actually came into effect at the end of the 2009–2010 school year. The status quo comes into effect when a CBA expires and no successor agreement is in place. *See Fairview Sch. Dist. v. Unemployment Comp. Bd. of Review,* 499 Pa. 539, 546–47, 454 A.2d 517, 521 (1982) ("The underlying rationale for the sta-

tus quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract.") Here, the 2005–2010 CBA did not expire until August 31, 2010. LIU's repeated assertion that the 2005–2010 CBA expressly provided that the agreement was to apply only through the end of the 2009–2010 school year is disingenuous.

and salaries was to be maintained until the parties reached an agreement on a new CBA. This conclusion is supported by the legal principles regarding status quo. We conclude, therefore, that the award is not inconsistent in its application of the law and, thus, the award is not contrary to law for this reason.

In further support of its position that the award is contrary to law, LIU contends that in issuing the award, the arbitrator effectively usurped the bargaining power of the parties and imposed upon them an arbitrated resolution as to salary issues that were still at impasse.[13] We disagree and again note our observations in *Northwest:* "[N]egotiation over the terms of a successor agreement does not suspend an *unexpired* CBA, nor preclude an arbitrator from enforcing rights provided thereunder merely because those same benefits are currently the subject of renegotiation." *Northwest,* 954 A.2d at 117. As pointed out by the Association, the parties' negotiations over a successor CBA are patently irrelevant to this matter. The arbitration award did not impose binding terms to be included in the successor CBA, but concerned only enforcement of the terms of the existing 2005–2010 CBA. Nothing in the award prevents the parties from negotiating different salary provisions in negotiating the successor CBA. On the other hand, even if the parties were in the midst of negotiating a successor agreement, such negotiations would not excuse LIU's obligation to honor the terms of the 2005–2010 CBA, and they do not prevent an arbitrator from interpreting those terms or issuing an award based on that

interpretation. Thus, LIU's argument in this regard fails.

██ Lastly, we address LIU's arguments that the arbitrator's award improperly extends beyond the expiration date of the 2005–2010 CBA and that the arbitrator exceeded his jurisdiction in issuing the award. As noted above, LIU relies upon *Midland* in support of these arguments. Nevertheless, these same contentions were raised by Northwest School District and rejected by this Court in *Northwest,* wherein we explained:

> Finally, relying on *Midland* ..., [Northwest] School District maintains that the award is legally erroneous because the remedy extends beyond the expiration of the agreement. In *Midland,* while a CBA was still in effect, the school district entered into an agreement with a neighboring school district to transfer all the students from one [o]f its schools to that other district on a tuition basis, thereby eliminating all teaching positions in the grades affected and resulting in building closure. The union filed a grievance, contending that the school district violated the CBA by subcontracting-out bargaining unit work. Ultimately, an arbitrator sustained the union's grievance and, after the contract had expired, directed the school district to, inter alia, rescind the contract with the other district and return the teachers to work. Common pleas vacated that part of the award rescinding the contract and directing the school district to rehire the teachers. Both this court and our Supreme Court affirmed on ap-

**13.** LIU also argues that LIU did not expressly consent to voluntary binding arbitration of that impasse under Section 804 of PERA, 43 P.S. § 1101.804 ("Nothing in this article shall prevent the parties from submitting impasses to voluntary binding arbitration with the proviso the decisions of the arbitrator which would require legislative enactment to be effective shall be considered advisory only"). Because we conclude that the award does not constitute a binding arbitrated resolution of the salary dispute at impasse between the parties, LIU's argument in this regard is irrelevant.

peal. In doing so, the Supreme Court emphasized that an arbitrator's authority is defined and limited by the terms of the agreement and the award must represent a legitimate interpretation thereof. The court did not hold that all post-expiration relief exceeds an arbitrator's jurisdiction. In fact, the court noted that, "under certain circumstances particular remedies awarded may in fact continue in effect beyond the expiration of the controlling agreement...." The court concluded, however, that the remedy in those circumstances exceeded the arbitrator's jurisdiction and failed the essence test because it required the school district to open a closed school and re-employ teachers two years after the agreement had expired. Clearly, the remedy exceeded the relevant CBA's temporal parameters, which bound the parties and limited the arbitrator.

*Midland* is completely inapposite. Here, the arbitrator did not award a remedy beyond the temporal parameters of the CBA. Rather, the arbitrator enforced the terms of the CBA and directed step and column movement that should have occurred prior to the expiration of the CBA. Accordingly, we conclude that the arbitrator did not exceed his jurisdiction under the agreement. *Northwest*, 954 A.2d at 117 (quoting *Midland*, 532 Pa. at 541 n. 3, 616 A.2d at 639 n. 3).

*Midland* is likewise inapposite to this case as well. In this instance, the arbitrator did not award a remedy beyond the temporal parameters of the 2005–2010 CBA. Instead, the arbitrator directed step and column movement, the issuance of a new salary schedule using the formulary process, and the grant of appropriate pay increases that should have occurred prior to the expiration of the 2005–2010 CBA. As such, the award does not improperly extend beyond the expiration date of that CBA. Moreover, the arbitrator did not exceed his jurisdiction under the agreement in issuing the award, as he simply interpreted and enforced the terms of the existing CBA between the parties.

In short, we discern no legal or factual basis upon which to distinguish this case from that of *Northwest* in disposing of the issues on appeal. We conclude, therefore, that based in large part on that en banc decision, the trial court did not err in denying LIU's petition to partially vacate the arbitration award.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 3rd day of April, 2014, the order of the Court of Common Pleas of Luzerne County is hereby AFFIRMED.